NO. CIV-14-112-W

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

KIMBERLY B. TURNER, as Personal Representative of
the Estate of ROBIN LEANDER HOWARD, deceased,

Plaintiff,
v.

CITY OF OKLAHOMA CITY, *et al.,*

Defendants.

DEFENDANT CITY'S
MOTION FOR SUMMARY JUDGMENT
AND
BRIEF IN SUPPORT

KENNETH JORDAN
Municipal Counselor

By:  Richard C. Smith, OBA #8397
     Jennifer Warren, OBA #30284
     Assistant Municipal Counselors
     200 N. Walker, Suite 400
     Oklahoma City, OK 73102
     (405) 297-2451   FAX (405) 297-3851
     Attorneys for Defendant
     City of Oklahoma City
     rick.smith@okc.gov
     jennifer.warren@okc.gov

# TABLE OF CONTENTS

Table of Authorities ............................................................................................... iii

Motion for Summary Judgment ............................................................................. 1

Brief in Support ...................................................................................................... 1

Material Facts Not In Dispute ................................................................................ 1

Statement of the Case .......................................................................................... 13

Standard on Summary Judgment ......................................................................... 14

Argument and Authorities .................................................................................... 15

    Proposition I:  The Defendant Officers Committed No
    Fourteenth Amendment Constitutional Violation ........................................... 15

        A. Denial of Medical Treatment ............................................................ 15

        B. Denial of Access to the Courts ......................................................... 17

        C. Denial of Familial Relationship ....................................................... 18

    Proposition II:  Defendant City's Policies, Procedures
    and Customs are Constitutional .................................................................... 19

    Proposition III:  Defendant City is Entitled to Summary
    Judgement on Plaintiff's § 1983 Claims Regarding Alleged
    Ratification (or Failure to Discipline because) of the
    Officers' Actions ........................................................................................... 21

    Proposition IV:  Defendant City's Training and Supervision
    of its Police Officers is Constitutional ......................................................... 24

    Proposition V:  Defendant City cannot be Liable on
    Plaintiff's State Law Claims ........................................................................ 28

    Proposition VI:  Defendant City's cannot be Liable on
    Plaintiff's State Constitutional Claim .......................................................... 29

Conclusion ........................................................................................................... 30

Certificate of Service ....................................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ................................................................................................ 15

*Barney v. Pulsipher,*
143 F.3d 1299 (10th Cir. 1998) .............................................................. 19, 26

*Berry v. City of Muskogee,*
900 F.2d 1489 (10th Cir. 1990) ...................................................................... 18

*Board of Comm'rs of Bryan Cty. v. Brown*,
520 U.S. 397 (1997) ........................................................................................ 26

*Bosh v. Cherokee County Governmental Building Authority*,
2013 OK 9, 305 P.3d 994 ................................................................................ 29

*Bryson v. City of Oklahoma City,*
627 F.3d 784 (10th Cir. 2010),
*cert denied* ___ U.S. ___, 131 S.Ct. 3030 (2011) ...................................... 9, 26

*Bryson v. Gonzales,*
534 F.3d 1282 (10th Cir. 2008) ........................................................................ 6

*Butler v. City of Norman,*
992 F.2d 1053 (10th Cir. 1993) ...................................................................... 23

*Canton v. Harris,*
489 U.S. 378 (1989) ............................................................ 11, 24, 25, 26

*Carr v. Castle,*
337 F.3d 1221 (10th Cir. 2003) .................................................. 8, 11, 25, 26

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ........................................................................................ 15

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986) .................................................................................. 15, 16

*City of Oklahoma City v. Tuttle*,
471 U.S. 808 (1985) ........................................................................................ 19

*City of St. Louis v. Praprotnik,*,
485 U.S. 112 (1986).................................................................9, 21, 22, 23, 24

*Connick v. Thompson,*
563 U.S. 51, 131 S. Ct. 1350 (2011) .........................................................24, 26

*Cordova v. Aragon,*
569 F.3d 1183 (10th Cir. 2009) .........................................................6, 9, 22, 23

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998)...............................................................................18

*Daniels v. Williams,*
474 U.S. 327 (1986)...............................................................................18

*Davidson v. Cannon,*
474 U.S. 344 (1986)...............................................................................18

*Dempsey v. City of Baldwin,*
143 Fed. Appx. 976 (10th Cir. 2005).........................................................23

*Franklin v. Thompson,*
981 F.2d 1168 (10th Cir. 1992) ..............................................................8

*Graham v. Connor,*
490 U.S. 386 (1989)...............................................................................20

*Jackson v. Oklahoma City Public Schools,*
2014 OK CIV APP 61, 333 P.3d 975 .....................................................28, 29

*Lounds v. Torres,*
217 Fed. Appx. 755 (10th Cir. 2007).........................................................8

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)...............................................................................14

*McMullen v. City of Del City,*
1996 OK CIV APP 1996, 920 P.2d 528 ...................................................28

*Monell v. Dep't. of Social Services,*
436 U.S. 658 (1978)...........................................................................19, 23

*Morales v. City of Oklahoma City,*
2010 OK 9, 230 P.3d 869 .....................................................................14

*Parker v. City of Midwest City*,
1993 OK 29, 850 P.2d 1065 .......................................................................28

*Pembaur v. City of Cincinnati,*
475 U.S. 469 (1986)..................................................................................22

*Perry v. City of Norman*,
2014 OK 119, 341 P.3d 689 ......................................................................29

*Schneider v. City of Grand Junction Police Department*,
717 F.3d 760 (10th Cir. 2013) .................................................................19

*Scott v. Harris,*
550 U.S. 372 (2007)...........................................................................12, 15

*Tennessee v. Garner,*
471 U.S. 1 (1985).......................................................................................4

*Wilson v. Meeks,*
52 F.3d 1547 (10th Cir. 1995) .......................................................16, 17, 27

*Wilson v. Meeks,*
98 F.3d 1247 (10th Cir. 1996) .............................................................16, 27

*Zinermon v. Burch,*
494 U.S. 113 (1990)..................................................................................18

**United States Constitution**

Fourth Amendment.............................................................................14, 15

Fourteenth Amendment ....................................................14, 15, 16, 18, 19

**Federal Statute**

42 U.S.C. § 1983 ....................................................11, 19, 22, 23, 24, 26, 28

**Federal Rules**

Tenth Cir. R. 32.1 .............................................................................................. 23

Fed. R. Civ. P. 56.............................................................................................. 14

**Oklahoma Constitution**

Article 2 § 30 ............................................................................................. 14, 29

**State Statutes**

51 O.S. § 151 *et seq.* .......................................................................... 11, 14, 28

70 O.S. § 3311. .................................................................................................. 2

**Ordinances**

OKC Municipal Code § 43-4 .............................................................................. 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KIMBERLY TURNER, as Personal )
Representative of the Estate of ROBIN )
LEANDER HOWARD, deceased, )
                               )
           Plaintiff, )
                               )
v. )           Case No. CIV-14-112-W
                               )
CITY OF OKLAHOMA CITY, et al., )
                               )
           Defendants. )

## DEFENDANT CITY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

**COMES NOW** a Defendant, the City of Oklahoma City, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully requests this Court grant it Judgment against Plaintiff as there is no dispute of material fact and Defendant City is entitled to Judgment as a matter of law. In support of its Motion, Defendant City offers the attached Brief in Support.

## BRIEF IN SUPPORT

## MATERIAL FACTS NOT IN DISPUTE

1.    Douglas Grady was employed by Defendant City as a police recruit on November 4, 2005 and received police training at the OCPD Training Academy from that date until May 4, 2006, for a total of 984 hours. (Affidavit of Chief William Citty, Exhibit 1; Syllabus of OCPD Recruit Class #122, Exhibit 2; OCPD Policies 670.0, Training; and 670.10, Recruit Training (Policies 670.0-670.10, Exhibit 3); and OCPD Procedures 431.0, Recruit Academy; and 431.10 Major Grades (Procedures 431.0-

431.10, Exhibit 4)). At the time of Defendant Grady's training, State law required only 300 hours of law enforcement training to be a commissioned officer and at the time of Defendant Coffey's training, State law required 600 hours. Historical and statutory notes on 70 O.S. § 3311(E).

2. Jeffrey Coffey was employed by Defendant City as a police recruit on January 11, 2008 and received police training at the OCPD Training Academy from that date until July 17, 2008, for a total of 1,056 hours. (Syllabus of OCPD Recruit Class #125, Exhibit 5. Exhibits 1, 3, and 4.)

3. During their training academy, these individual Defendants received training in the following subjects that may be relevant to the issues in this case: Laws of Arrest; Searching and Transporting Prisoners; Use of Force; Oklahoma Custody Control System; Observation and Perception Concepts; Concepts of Probable Cause; Human Relations; Introduction to Patrol; and (then existing) OCPD Policies, Procedures and Rules.[1] (Copies of these outlines, Exhibits 6-18, respectively. Exhibit 1.)

4. Following their graduation for the Police Academy, the individual Defendants, as do all OCPD recruits, received approximately four (4) months of additional training with a Field Training Officer. (OCPD Policy 670.20, Field Training and Evaluation Program, Exhibit 19; Procedures 434.0, Field Training Evaluation Unit; and 434.10, Field Training Evaluation Program, Exhibit 20; Exhibit 1.)

---

[1] There is no outline for OCPD Policies, Procedures and Rules. Instead, each recruit is given a copy of the OCPD Operations Manual which includes all Policies, Procedures and Rules. The recruits were instructed from this manual.

5.     Oklahoma Statute, Title 70, Section 3311.4, effective 2008, requires that full-time police officers complete 25 hours of continuing law enforcement training every year. The OCPD's requirements are consistent with this law. (OCPD Policy 670.30, In-Service Training, Exhibit 21; and OCPD Procedures 436.0, In-Service Training; and 436.05 Attendance, Exhibit 22; Exhibit 1.)

6.     Officer Douglas Grady had attended 335 additional hours of In-Service training from the date of his graduation from the OCPD Recruit Academy through June 19, 2012. (Exhibit 23, In-Service Training Record of Grady; Exhibit 1.) During the 2010 Phase III In-Service training (Outline for 2010 Phase III In-Service Training attached hereto as Exhibit 24; Exhibit 1), officers were instructed that while they can use pressure points to attempt to place an active resistor into custody (see pp. 53-56, Exhibit 24), "there are no pressure points in the rib cage." (P. 56, Exhibit 24.) Thus, knee strikes to the rib cage were not authorized.  An "active resistor" includes a subject who "tucks arms underneath of them when officer is trying to handcuff them." (P. 10, Exhibit 24.) According to the officers, Mr. Howard was an active resistor. See Facts 21-24 herein.

7.     Officer Jeff Coffey had attended 335 additional hours of In-Service training from the date of his graduation from the OCPD Recruit Academy through June 19, 2012.  (In-Service Training Record of Coffey, Exhibit 25; Exhibit1.) Defendant Coffey attended the same Phase III In-Service training referred to in Fact No. 6 above. (Exhibit 24.)

8.     Officers are issued copies of the OCPD Operations Manual, which contains current OCPD Policies, Procedures and Rules, upon their induction. Officers are directed to be familiar with the contents of it and to keep it updated with new policies, procedures

and rules as issued. In 2000, the OCPD issued the Fourth Edition of its Operations Manual. (OCPD Policy 030.0, Review, Exhibit 26; OCPD Procedures 113.0, Issuance of Policies, Procedures and Rules; 113.10, Responsibility; 113.20, Distribution of the Operations Manual; and 113.30, Update of Operations Manual (Procedures 113.0-113.30, Exhibit 27; OCPD Rules 100.0, Compliance with Policies, Exhibit 28; and 105.0, Condition of Manual, Exhibit 29; Exhibit 1.)

9.   In 1985, in response to the Supreme Court's decision in *Tennessee v. Garner,* 471 U.S. 1 (1985), the City Council of the City (pursuant to § 43-4 of the Municipal Code[2]) enacted OCPD Policy 9.03. (Resolution of City Council dated July 16, 1985, Exhibit 32.) This policy is now OCPD Policy 554.0-554.60. This policy also deals with the use of non-deadly force. (OCPD Policies 554.0-554.60, Exhibit 33; Exhibit 1.)[3]

10.   As of June 19, 2012, Defendant City had adopted the following police department policies that may be relevant to Plaintiff's claims:  105.0, Mission Statement of the Oklahoma City Police Department (Exhibit 34); 110.0, Primary Objective (Exhibit 35); 120.10, Apprehension of Offenders (Exhibit 36); 205.0, Standard of Conduct: 205.10, Law Enforcement Code of Ethics; 205.15, Oath of Office (205.0-205.15, Exhibit

---

[2] Policies for the OCPD are adopted by the City Council.  Procedures are set by the Chief.  See § 43-4 of the Municipal Code.

[3] Defendant City denies that the officers used deadly force as is alleged by Plaintiff in ¶ 41(a) of the Complaint. Deadly force is defined as that force which is intended to cause death or serious bodily harm or which is likely to cause death or serious bodily harm. OCPD Policy 554.10. The only (admitted to) force used by the officers were knee strikes and physical force.

37); 220.0, Respect for Constitutional Rights (Exhibit 38); 285.0, Allegations of Employee Misconduct; 285.10, Objectives of Personnel Investigations (285.0-285.10, Exhibit 39); 287.0, Discipline (Exhibit 40); 505.0, Nature of Task (Exhibit 41); 510.0, Police Action Based on Legal Justification (Exhibit 42); 512.0, Alternatives to Physical Arrest or Detention (Exhibit 43); and 554.0-554.60, Use of force. (Exhibit 33.)(Exhibit 1.)

11.  The OCPD has procedures requiring an investigation on any use of force beyond routine handcuffing. Originally, a lieutenant (Lieutenant Northcutt) started a use of force investigation in this case when he was notified of the individual Defendants' use of force. When Plaintiff was hospitalized, the Office of Professional Standards (IA) started its investigation pursuant to 150.18-150.25. (Exhibit 44.) Because Plaintiff's decedent died after this encounter, it was investigated by the OCPD Homicide Division pursuant to OCPD Procedures 150.0-150.02[4] and 150.18-150.31. (Exhibit 44.) Contrary to Plaintiff's allegations in her Petition, the OCPD investigation into each incident in which a person dies after such an encounter is presented to the District Attorney's office for that office's determination as to whether criminal charges are warranted against the involved officer(s). OCPD Procedure 150.18(K), Exhibit 44. After that review, the incident is reviewed by the police administration to determine if the officer's actions complied with OCPD Policies and Procedures. OCPD Procedure 150.18(K) and 150.30; 150.14 and 160.40.  (Exhibits 44 and 45; Exhibit 1.) This case was presented to Oklahoma County

---

[4] Please note that Procedure 150.02(A) requires the officer to "Render first aid and/or summon medical attention." (Exhibit 44.)

District Attorney David Prater, who, on November 12, 2012, advised the OCPD he had "reviewed the investigative reports, photographs, witness statements and other documents contained in the officer involved case book…" He opined "there exists inadequate evidence to establish probable cause that a crime has been committed by any law enforcement officer involved in the arrest of Robin L. Howard." (Letter from District Attorney Prater dated November 2, 2012, Exhibit 46.) (Defendant City denies that it's after the incident actions could have caused the incident. *Cordova v. Aragon,* 569 F.3d 1183, 1194 (10th Cir. 2009) and *Coffee v. City,* CIV-08-239-W. This evidence is offered to refute Plaintiff's claim that the City fails to investigate[5] any incident involving force (¶¶ 41(d) and (j)) and a failure to seek criminal prosecution of officers (¶ 41(K)). As noted by the Tenth Circuit Court in *Bryson v. Gonzales,* 534 F.3d 1282, 1289-90 (10th Cir. 2008), the District Attorney, and not the City, is responsible for the prosecution of felonies in Oklahoma.

12. The OCPD also maintains an Early Intervention Program, which requires a re-review of each use of force if an officer exceeds a certain number of uses of force in a certain time frame. OCPD Procedure 148.0, Early Intervention Program; 148.10, Criteria; 148.20, Responsibilities of the Office of Professional Standards; 148.30, Supervisor's Responsibilities; 148.40, Responsibilities of Division Commander; 148.50, Responsibilities of the Bureau Chief; and 148.60, Responsibilities of the Chief of Police. (Procedures 148.0-148.60, Exhibit 47; Exhibit 1.)

---

[5] Which would appear to contradict Plaintiff's claim of ratification. How would the OCPD have known what its officers did if it did not investigate?

13.    Other OCPD procedure that are relevant to this incident include Complaints against Police Department Employee (OCPD Procedure 143.0, Exhibit 48); and procedures regarding discipline and retraining: 170.0, Disciplinary Action; 170.10, Verbal Counseling; 170.15, Transfer; 170.25, Progressive Disciplinary Actions; 170.30, Reprimands for Cause; 170.45, Probation; 170.50, Reduction of Salary Rate for Cause; 170.60, Demotion to a Designated Rank or Grad for Cause; and 170.70, Termination of Employment. (Procedures 170.0-170.70, Exhibit 49; Exhibit 1.)

14.    There are procedures regarding medical treatment:  OCPD Procedure 150.02(A) requires officers to summon medical treatment for arrestees injured during an officer's attempt to place them into custody. (Exhibit 44.) OCPD Procedure 233.0, Medical Treatment for Persons in Custody; 233.10, Hospital Selection Guideline; and 233.20, Injured Before Booking. (Procedures 233.0-233.20, Exhibit 50; Exhibit 1.)

15.    There are procedures regarding arrests:  OCPD Procedure 230.0, Arrest Procedure; 230.10, When a Person Can be Arrested; 230.20, Hold for State Charges; 230.21, Felony Offense; and 230.22, Misdemeanor Offense. (Procedures 230.0-230.22, Exhibit 51; Exhibit 1.)

16.    As of June 19, 2012, the OCPD had adopted other Rules that may be relevant to Plaintiff's claims:  OCPD Rule 120.0, Truthfulness/Cooperation (Exhibit 52); 348.0, Use of Force (Exhibit 53); and 470.0, Constitutional Rights (Exhibit 54; Exhibit 1.)

17.    The Council on Law Enforcement, Education and Training must issue or approve all basic police training outlines. All OCPD recruit basic outlines are CLEET issued or approved. (Exhibit 1.)

18.    Defendant City's policy on Use of Force, and its training of its police officers on the use of deadly and non-deadly force, have been repeatedly upheld by Judges in this District and the Tenth Circuit Court. These cases include, but are not limited to, *Rios v. City of Oklahoma City, et al.,* CIV-87-2383-T; *Franklin v. Thompson, et al.,* CIV-89-1492-T; *Carr v. City of Oklahoma City, et al.,* CIV-01-124-C; *Grigsby v. City of Oklahoma City,* CIV-02-1220-F; *Fuston-Lounds v. City of Oklahoma City, et al,* CIV-03-1519-T; *Baker v. City of Oklahoma, et al.,* CIV-06-322-L; and *Domani v. City of Oklahoma* City, CIV-10-1256-W. (Copies of these Orders are Attachments A-G, respectively.) In *Franklin,* the plaintiff only appealed the jury verdict in favor of the officer and did not challenge the ruling upholding Defendant City's policies and procedures. This jury verdict was upheld.   *Franklin v. Thompson,* 981 F.2d 1168 (10th Cir. 1992). In *Carr v. City,* Judge Cauthron upheld the City's written policies and training of officers on the use of deadly force. The plaintiff appealed this Order, and the Tenth Circuit affirmed in *Carr v. Castle,* 337 F.3d 1221 (10th Cir. 2003).  In *Fuston-Lounds v. Torres, et al.,* the plaintiff alleged a failure to train in another deadly force case. The District Court granted the City Judgment. Ms. Lounds appealed and the Circuit Court affirmed in *Lounds v. Torres,* 217 Fed. Appx. 755 (10th Cir. 2007).

In *Coffee v. City of Oklahoma City, et al.,* CIV-08-239-W (Order, Attachment H), this Court granted Defendant City's Motion for Summary Judgment on plaintiff's claim of ratification of the defendant officer's use of alleged excessive force. That plaintiff argued that because the OCPD, after the fact, investigated the officer's use of force and did not discipline him, it ratified the use of force. This Court noted that the City's after-the-fact

investigation could not be the direct causal link of the officer's use of force. (Pp. 10-11.) See also *Cordova v. Aragon,* 569 F.3d 1183 (10th Cir. 2009). Additionally, the OCPD did not believe plaintiff's "version" of the event, and therefore, the City could not have approved the "basis" for the event. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1986), and *Bryson v. City of Oklahoma City,* 627 F.3d 784, 788 (10th Cir. 2010), *cert denied* ___ U.S. ___, 131 S.Ct. 3030 (2011).

19.    In March 2007, the OCPD was accredited by the Commission on Accreditation for Law Enforcement Agencies, Inc., (CALEA). This agency reviewed the various activities of the OCPD and found that the OCPD's use of force regulations are thorough and require… an investigation by a supervisor of the next highest rank. (Chapter 1, p. 22 of CALEA's January 15, 2007 Assessment Report, Exhibit 55.) It further describes the review process for each use of force (*id.*). They found the OCPD had a "very comprehensive Code of conduct" (p. 26 Chapter 26, Exhibit 55); an "emphasis on quality training" which was "very evident" (p. 27 Chapter 33, Exhibit 55) and states IA's investigations "are very thorough, well documented and consistent with agency directives…" (Chapter 52 at p. 30, Exhibit 55.) On March 27, 2010, CALEA again awarded the OCPD Accreditation. (March 2007 and 2010 CALEA Letters of Accreditation, Exhibit 56; Exhibit 1.)

20.    Plaintiff has no knowledge of the OCPD's training of its officers or of its written policies. (Deposition of Plaintiff, p.129.) Instead, she claims the City is liable because it "ratified" the individual Defendants' actions, because it failed to discipline them. (See Plaintiff's Response to Defendant City's Interrogatory No. 3, Exhibit 57.) At ¶ 41(g) of

the Petition, Plaintiff alleges the City failed to train its officers on the duty to "provide medical attention to persons sustaining injuries while in custody…" Not only is this not true, Officer Coffey (or his partner) summoned EMSA after the Plaintiff's decedent was placed into custody. (Fact No. 26.) Plaintiff's decedent refused treatment. (Fact No. 27.)

21.   On June 19, 2012, at approximately 1:25 p.m., Plaintiff's decedent, while driving his mother's vehicle, committed a traffic violation. (Deposition of Coffey, pp. 5.1-9; 7.2-7.) Defendant Coffey and his partner, OCPD Officer Michael Anderson (who is not a defendant herein) gave chase. Defendant Coffey engaged the marked vehicle's emergency lights, the Plaintiff's decedent refused to stop and fled for approximately two (2) blocks when his vehicle ended in the backyard of the house at 1412 Monticello Avenue. (Deposition of Coffey, pp. 7.17-12.25. See also ¶¶ 10 and 11 of the Petition.)

22.   Mr. Howard exited the vehicle and attempted to run. He had a silver object in his hand, which was observed by Defendant Coffey and Officer Anderson. (This object was later determined to be a cell phone.) Mr. Howard attempted to escape over a fence. Defendant Coffey pulled him off the fence and fell on top of him. (Deposition of Coffey, pp. 14.4-16; 52.1-19.)

23.   Defendant Grady approached the two who were still struggling. Both officers were yelling at Mr. Howard to "stop resisting" and because his hands were under his body, to "give us your hands." Mr. Howard still resisted. (Deposition of Coffey, pp. 57.5-22; 59.3-7; and deposition of Grady, pp. 11.8-11.12; p. 13.20-14.5.)

24. Mr. Howard managed to get into a "runner's stance."[6] Defendant Coffey attempted three (3) knee strikes, two of which missed the target of Mr. Howard's "common peroneal nerve in his left thigh because of Howard's resistance. (Deposition of Coffey, pp. 24-30.) Defendant Grady was on the right side of Howard's body and he used a knee strike to Howard's buttocks. (Deposition of Grady, p. 11.15-11.19; p. 13.20-14.5.)[7]

25. The officers grabbed Howard's arms and brought them behind his back. Defendant Coffey heard a "pop" from his left arm. (Deposition of Coffey, p. 34.2-23.)

26. Defendant Coffey (or his partner) summoned EMSA and fire paramedics. (Deposition of Coffey, p. 35.14-21; 51.14-17.)

27. According to the OCPD's Computer Aided Dispatch (CAD) Report, (which records all 911 calls and police communications with the dispatcher), at 13:26:50, dispatch was advised that Howard was running on foot; at 13:27:08, dispatch was advised that Howard was being "taking into custody; and at 13:28:10, Coffey's partner requested EMSA to respond to the scene. (CAD Report, Exhibit 58; Exhibit 1.) When the paramedics approached Howard, he refused medical treatment. (Affidavit of OCFD Corporal Smith, Exhibit 59; Copy of OCFD Run Report on incident 12041454 attached

---

[6] Defendant Coffey defined this as Mr. Howard raised up on his extended arms and leaning on his toes. (Deposition of Coffey, pp. 24.3-25.17.)
[7] Plaintiff has produced some witnesses who claim that the officers punched Howard. For purposes of Defendant City's dispositive Motion, this factual dispute is not relevant, for a municipality cannot be liable under 42 U.S.C. § 1983 just because an officer uses excessive force (which is denied.) *Carr v. Castle,* 337 F.3d 1221, 1228 (10th Cir. 2003), citing *Canton v. Harris,* 489 U.S. 378, 388 (1989). Further, Plaintiff fails to allege a state law claim under the Governmental Tort Claims Act, 51 O.S. § 151, *et seq.,* against Defendant City.

as Exhibit 60.)[8]

28.   At 13:44:26, Defendant Coffey left the scene and took Mr. Howard to Integris Southwest Medical Center for medical clearance.  (CAD Report, Exhibit 58; Deposition of Coffey, pp. 41-42.)

29.   Because of his injuries, on June 19, 2012 at 2:21 p.m., Mr. Howard was admitted to the hospital.  (Plaintiff's decedent's medical records, Exhibit 62.)

30.   On the admission notes, Integris Southwest Medical Center noted "none" as Mr. Howard's next of kin. (Plaintiff's decedent's medical records, Exhibit 62.)

31.   Because of Mr. Howard's injuries, then Lieutenant Boxwell of the Office of Professional Standards was assigned to investigate this incident almost immediately. He interviewed Mr. Howard. Lt. Northcutt took photographs of Mr. Howard. (Affidavit of Lt. Northcutt, Exhibit 63; Photos of Mr. Howard, Exhibit 67.) Lieutenant Boxwell directed that Mr. Howard's cell phone be returned to him and that Mr. Howard be allowed to use the telephone. (Affidavit of Ryan Boxwell, Exhibit 64.)

32.   Mr. Howard admitted to Captain Byrne, who also interviewed him on June 19, 2012, that he fled the officers because he had no driver's license and did not want to go back to jail. (Affidavit of Captain Patrick Byrne, Exhibit 31.) (After this incident, the OCPD's investigation discovered there was a "no bail" warrant for Mr. Howard's arrest for failure to pay court costs on his felony conviction of Trafficking in Illegal Drugs from Garfield County.  *State v. Howard, Robin,* CF-2007-492, warrant, Exhibit 65. )

---

[8] Under *Scott v. Harris,* 550 U.S. 372 (2007), a court is not required to ignore evidence made contemporaneously when Plaintiff later denies those "facts."  (Exhibit 61, Response for Admissions at Nos. 3-7.)

33. On June 24, 2012, Mr. Howard died of acute pneumonia due to chest trauma. (Report of Medical Examiner, Exhibit 66.)

## STATEMENT OF THE CASE

On December 31, 2013, Plaintiff[9] filed a Petition in Oklahoma County District Court as Personal Representative of the Estate of Robin Howard, deceased. Defendant City and the individual Defendants (OCPD officers)[10] removed the case to this Court based on federal question jurisdiction. Plaintiff alleges a whole host of alleged defects of the City regarding this incident, excessive force under the Oklahoma Constitution (¶¶ 22-24); excessive force under the Fourth Amendment to the United States Constitution (¶¶ 37-43); failure to train on use of force (¶¶ 41(a) and (b));[11] failure to provide medical treatment (¶ 41(g)); apparent failure to discipline (¶ ¶ 41(c) and (h)); failure to monitor and evaluate performance of officers regarding use of force (¶ 41(d) and (h)); failure to adequately investigate citizen's complaints regarding deadly or unreasonable force (¶¶ 41(e) and (f)); ratification (¶¶ 17, 41(i) and 42); failure to adequately investigate officer involved incidents (¶ 41(j)) and a failure to seek criminal prosecution against officers whose behavior violates the law (¶ 41(k)). It appears that Plaintiff alleges the individual Defendants are liable for state law assault and battery (outside the protections of the

---

[9] Joining Plaintiff as a Plaintiff was Lonzetta Morrison, as Co-representative of the Estate of Robin Howard, deceased. On March 23, 2015, this Court dismissed Ms. Morrison as a Plaintiff. (Doc. 41.)

[10] Originally, Plaintiff named OCPD Chief of Police Bill Citty as a Defendant. This Court dismissed the action against him on March 19, 2014 (Doc. 26), but granted Plaintiff leave to amend within fourteen (14) days. On March 31, 2014, Plaintiff moved to dismiss Defendant Citty (Doc. 27) and on this date, the Court did so. (Doc. 28.)

[11] The City's policies and training on the use of deadly force has been repeatedly upheld in this Court and by the Tenth Circuit Court of Appeals. See ¶ 18 herein.

GTCA, 51 O.S. § 151 *et seq.*)[12] (¶¶ 25-26); for state law wanton and reckless conduct (¶¶ 27-30); Intentional Inflection of Emotional Distress (¶ ¶ 31-33) and claims under the United States Constitution (¶¶ 34-43.) Plaintiff seeks to hold Defendant City liable under state law based on *respondeat superior* for a violation of Article 2 § 30 of the Oklahoma Constitution. Plaintiff fails to allege a negligent use of excessive force under the GTCA, 51 O.S. § 151 *et seq.,* against Defendant City. See *Morales v. City of Oklahoma City,* 2010 OK 9, 230 P.3d 869. Simply put, Plaintiff alleges an excessive force case under the Fourth Amendment and a denial of medical care under the Fourteenth Amendment to the United States Constitution against Defendant City.

Defendant City is entitled to judgment on Plaintiff's claims because there is no dispute as to any material fact.

## STANDARD ON SUMMARY JUDGMENT

To succeed on a Motion for Summary Judgment, the moving party must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. If that party has carried its burden under Rule 56, the nonmoving party must do "more than simply show that there is some metaphysical doubt as to the material facts" and must come forward with "specific facts showing that there is a *genuine issue for trial*." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, "the mere existence of *some* alleged factual dispute

---

[12] Despite including Defendant City in the title of Plaintiff's Second Cause of Action, neither this Cause of Action (or anywhere in the Petition, except ¶ 23 in her claim under the Oklahoma Constitution), does Plaintiff assert the officers' actions were in the scope of their employment; instead, this Cause of Action refers to actions outside the scope of employment under the GTCA and the City cannot be liable. 51 O.S. § 153.

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issues of *material* fact." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-248 (1986). "Material" facts are those that "may affect the outcome of the suit involving the governing law." *Id.* at 248. Furthermore, when an opposing party tells a story that is "blatantly contradicted by the record, so that no jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a Motion for Summary Judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

Lastly, summary judgment is appropriate where the moving party shows that the opposing party is unable to produce sufficient evidence in support of the opposing party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party's summary judgment does not need to be supported by affidavits or other material specifically negating the non-moving party's claim, so long as the court is satisfied that there is an absence of sufficient evidence to support such a claim. *Id.*

## ARGUMENT AND AUTHORITIES

### Proposition I: The Defendant Officers Committed No Fourteenth Amendment Constitutional Violation.

#### A. Denial of Medical Treatment

Plaintiff alleges that the defendant officers violated the Fourteenth Amendment by unlawfully denying her decedent medical treatment.[13] A municipality may not be held liable on a constitutional claim, regardless of what its policies authorize, if its employees did not commit a constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796,

---

[13] Defendant City concedes that a plaintiff's Fourth Amendment unreasonable seizure (force) is normally a jury question.

798-99 (1986). Here, the officers did not violate Plaintiff's decedent's Fourteenth Amendment constitutional rights because medical treatment was summoned by the officers, denied by Mr. Howard and ultimately provided. (Fact Nos. 28-29.)

In *Wilson v. Meeks,* 52 F.3d 1547, 1555-56 (10th Cir. 1995), the Tenth Circuit Court held that under the Fourteenth Amendment, officers were only required to provide first aid and summon paramedics to those injured during attempts to place a suspect into custody. In *Wilson v. Meeks,* 98 F.3d 1247 (10th Cir. 1996), the Court held the municipality was also entitled to judgment because its employees committed no constitutional violation regarding right to medical care (and regarding a denial of access to the courts.) This Court denied the City's Motion to Dismiss on this issue because the Plaintiff's allegations were that "once emergency care personnel arrived, Coffey and Grady refused to let them treat Howard." (Order dated March 19, 2014, Doc. 25 at pp. 7-8.)[14] The facts of this case are: Defendant Coffey (or his partner) summoned EMSA (Fact No. 26); fire paramedics asked Plaintiff's decedent <u>if he wanted medical treatment and he refused it</u>. (Fact No. 27.) Defendant Coffey transported Mr. Howard to Integris Southwest Medical Center and he arrived at the hospital at 2:21 p.m. (Fact No. 28.) While he needed medical treatment, it was not something first aid could render. (Exhibits 62 and 67.) (See *Wilson.*) Even after they arrived at 2:21 p.m., surgery (left chest tube placement) was not performed until 1817 hours i.e. 6:17 p.m. (Exhibit 62.) The Medical

---

[14] In responding to Defendant City's Motion, Plaintiff "claimed" she had asserted Fourteenth Amendment claims of denial of access to the courts and the "unlawful termination of familial association." Defendant City's Reply argued Plaintiff did not assert any such claim. (See style and ¶ 1 of the Petition.) No finding was made regarding these claims.

Examiner did not opine that Plaintiff's injuries were exacerbated by the alleged delay of medical care. (Exhibit 66.)

**B. Denial of Access to the Courts:**

Plaintiff argues she has pled a denial of access to the courts claim because the police refused to release the police reports. First, Plaintiff pled no such cause of action. Secondly, the Tenth Circuit has rejected this type of claim. In *Wilson,* the Court also considered that Plaintiff's claim of a denial of access to the courts. The Court stated at 52 F.3d 1557:

> This cursory analysis, however, ignores the rule that plaintiffs must set forth a clearly established duty to support their claim. This circuit has never created such a duty. Other circuits have recognized a cause of action for cover-up. *Williams v. City of Boston,* 784 F.2d 430, 435 (1st Cir. 1986) (in dicta); *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984); and *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir. 1983). Yet the distinction is drawn between interference with discovery and interference with the filing of the complaint. The Fifth Circuit limits the right of access claim to the latter. *Foster v. City of Lake Jackson,* 28 F.3d 425, 430 (5th Cir. 1994). Given *Ryland* was the first case establishing the right under section 1983, this limitation is persuasive. *Bell* relied on *Ryland,* and the Fifth Circuit later rejected that reliance. *Id.* at 430 n. 7 ("We question *Bell's* reliance on *Ryland* for any broader definition of right of access than one encompassing the right to institute suit."). We conclude these cases do not comprise the "great weight of authority" necessary for a clearly established duty based on the alleged cover-up in the instant case.
>
> • • •
>
> There is no constitutional duty for a police department to disclose details concerning a police shooting to the public. *Williams,* 784 F.2d at 435. Naturally, the duty to disclose such facts may arise in response to discovery or other legal process. In such a case, however, the duty is merely legal rather than constitutional.

As in *Wilson,* 52 F.3d at 1557 (grand jury review), there is evidence in this case that the

OCPD submitted its investigation to the prosecuting authority for his review and possible prosecution.  (Exhibit 46.) There is no constitutional duty to disclose facts of any incident and Plaintiff's denial of access argument should be dismissed.

### C.  Denial of Familial Relationship:

Again, Plaintiff did not plead such claim. Additionally, Plaintiff fails to identify whether this (or any of their Fourteenth Amendment claim(s)) are procedural or substantive due process. If procedural, Plaintiff fails to argue why post deprivation remedies supplied by Oklahoma law are not sufficient.  *Daniels v. Williams,* 474 U.S. 327 (1986), *Davidson v. Cannon*, 474 U.S. 344 (1986) and *Zinermon v. Burch,* 494 U.S. 113 (1990). If substantive, Plaintiff fails to argue that the City's conduct was "conscience shocking" and therefore a violation of substantive due process. See *County of Sacramento v. Lewis,* 523 U.S. 833 (1998).

In any event, the Tenth Circuit has already outlined the "elements" of Plaintiff's familial claim. In *Berry v. City of Muskogee,* 900 F.2d 1489, 1504 (10th Cir. 1990), the Court stated:

> In *Trujillo v. Board of County Commissioners,* 768 F.2d 1186, 1190 (10th Cir. 1985), we held a mother and sister had no § 1983 cause of action arising out of a victim's death unless the unconstitutional act was directed at and intended to deprive them of their personal constitutional rights.

(The Court did hold in *Berry* that the loss of consortium was an element of a § 1983 wrongful death claim. 900 F.2d at 1507.)

This action was brought by the Plaintiff "as Personal Representative of the Estate of Robin Howard" (style and paragraph 1.) It was "brought" on "behalf of the Estate of

Robin Howard, deceased." (Paragraph 1.) It was not brought by a family member. She did not allege the Defendants' actions were directed toward her.[15]

As none of the defendant officers deprived Plaintiff's decedent of his Fourteenth Amendment rights, Defendant City cannot be held liable on this claim, regardless of what its policies authorize.

### Proposition II: Defendant City's Policies, Procedures and Customs are Constitutional.

In a § 1983 action, a municipality may only be held liable "for its own unconstitutional or illegal policies" and not merely because its employee injured the plaintiff. *Barney v. Pulsipher,* 143 F.3d 1299, 1308 (10th Cir. 1998). A municipal policy or custom must be the "moving force" behind a constitutional injury in order to impose municipal liability. *Monell v. Dep't. of Social Services*, 436 U.S. 658, 690-95 (1978). The challenged policy must also be "closely related to the violation of the plaintiff's federally protected right." *Schneider v. City of Grand Junction Police Department*, 717 F.3d 760, 770 (10th Cir. 2013). Proof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality where the policy relied on is not itself unconstitutional. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Defendant City's policies and training regarding use of force, discipline, and providing

---

[15] To the extent Plaintiff is complaining that the family members of Mr. Howard were not notified of his arrest and/or hospitalization, the facts do not support such a complaint. Sergeant Grady testified that he notified Mr. Howard's mother at the scene that he was going to jail. (Deposition of Grady, pp. 78.6-79.4.) Additionally, Lieutenant Boxwell directed that Mr. Howard's cell phone be returned to him and he be allowed to use the telephone in the room while he was hospitalized. (Exhibit 64.) (See Fact No. 31.) In any event, Plaintiff has not identified any constitutional right to be notified when a person is taken into custody.

medical care are constitutional.

Defendant City's policies regarding use of force are constitutionally sufficient and could not have been the direct cause of any alleged constitutional violation. Defendant City maintains policies regarding use of force, (Exhibit 33), investigations and review of use of force (Exhibit 44), investigations of citizen's complaints, (Exhibit 48), and providing medical attention to arrestees. (Exhibits 44 and 50.) Consistent with the constitutional standard articulated in *Graham v. Connor*, 490 U.S. 386 (1989), Defendant City's policy regarding use of force states that officers may only use the amount of force that is "objectively reasonable" in light of the facts and circumstances as a reasonable officer would perceive them to be at the time of the incident. Defendant Coffey was not asked about the proper amount of force in his deposition. Defendant Grady stated officers try to use the least amount of force necessary to effect a lawful arrest. Defendant City's policies also state an officer's first priority is to ensure that medical attention is received as rapidly as possible whenever an arrested person requires medical attention. All of these policies comply with constitutional requirements and Plaintiff has no evidence that any of the policies could have caused a violation of Plaintiff's decedent's constitutional rights.

Plaintiff also attempts to allege that the City had a *de facto* custom of condoning illegal and unconstitutional behavior by its officers. Plaintiff's Petition, ¶ 41. However, Plaintiff has no proof of this claim. The OCPD has an extensive investigation and review process regarding the use of force and complaints lodged against police department employees. A supervisor investigates each use of force and the use of force is reviewed by a screening committee. (Exhibits 44 and 45.) In death cases, the District Attorney and

the OCPD's Professional Standard Division each conduct their own review of the use of force. (Exhibit 44.) The OCPD also investigates and reviews each citizen complaint that is filed against an employee. (Exhibit 48.) The OCPD has an early intervention program to identify any officers that may have a pattern of behavior regarding uses of force. (Exhibit 47.) Finally, Defendant City has policies and procedures regarding discipline of officers. (Exhibits 40 and 49; Rule 205.0, Disciplinary Actions, Exhibit 68; Exhibit 1.) The investigation and review process negate any claim that the City was deliberately indifferent or that it had a custom of condoning the use of excessive force.

Plaintiff has no proof that the officers involved in this incident were aware of any claimed deficient custom or that the custom directly caused the use of force in this case. In *City of St. Louis v. Praprotnik*, 485 U.S. 112(1988), the Supreme Court stated:

> Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'"

*Id.* at 117. Plaintiff cannot meet the high standard described in *Praprotnik* because she has no proof that the OCPD has any "widespread practice" other than what its written policies describe.

> ### Proposition III: Defendant City is Entitled to Summary Judgment on Plaintiff's § 1983 Claims Regarding Alleged Ratification (or Failure to Discipline because) of the Officers' Actions.

Plaintiff alleges that Defendant City is liable because it ratified the officers' actions. The Plaintiff does not have any evidence of ratification of the events as Plaintiff

alleges them to have occurred. Furthermore, Defendant City does not believe that ratifying or approving an officer's action is a viable constitutional theory for municipal liability in a § 1983 excessive force case.

Under 42 U.S.C. § 1983, a governmental party may be liable when it "subjects or causes to be subjected" any person to the deprivation of any rights secured by the United States Constitution. Therefore, there is an issue of causation which requires proof that the defendant municipality was the direct cause of the plaintiff's injury. Any action which was taken after-the-fact cannot subject or cause a plaintiff to be subjected to an injury. *Cordova v. Aragon,* 569 F.3d 1183, 1194 (10th Cir. 2009).

In *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986), the Supreme Court held that a single decision by a municipal policymaker that resulted in an unconstitutional harm could support municipal liability. However, it stated, "[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made [by policymakers] from among various alternatives." *Id.* at 483-484. There is nothing indicating that this decision can be an after-the-fact decision. In fact, *Pembaur* does not dispense with the causation requirement and therefore does not lend itself to an interpretation that an after-the-fact decision or alleged approval could assess liability to a municipality.

In *City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988), the Supreme Court in an employment case, found that ratification may be a viable municipal theory of liability. This case involved an employee, Praprotnik, who had had violated a policy restricting employees from engaging in work for private clients. Praprotnik was reprimanded but

subsequently appealed the reprimand to an internal review board and had it reversed. Later Praprotnik was transferred to another division, which he also appealed, but the internal review board refused to hear his appeal and Praprotnik filed suit. In dealing with this employment case, the Court stated, "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* at 127. The Court also stated at 126, "If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability."

Proof of causation is required before Plaintiff can prevail on her theory of ratification, and Plaintiff cannot prove a genuine issue of material fact with regard to whether there is a direct causal link between any City policy approving the individual Defendants' actions. Therefore, the City's policy cannot be the moving force behind the violation. *Monell,* 436 U.S. at 694 (liability attaches under § 1983 when execution of government's policy or custom inflicts the injury); *Dempsey v. City of Baldwin,* 143 Fed. Appx. 976 (10th Cir. 2005) (cited pursuant to Tenth Cir. R. 32.1) (final policymaker must not only approve decision, but also must adopt basis for the decision and ratification must be the moving force, or cause, of the alleged constitutional violation.) But see *Cordova v. Aragon,* 569 F.3d 1183, 1194 (10th Cir. 2009) ("basic principles of linear time prevent us from seeing how conduct that occurs <u>after</u> the alleged violation could have somehow caused the violation.")

In *Butler v. City of Norman,* 992 F.2d 1053 (10th Cir. 1993), the Tenth Circuit found that a failure to discipline a single officer for a violation of a person's

constitutional rights is not sufficient to impose liability upon the municipality. It would seem to reason that any conclusion made in a police internal investigation which can result in disciplinary measures for an officer would also not impose liability on the City.

Plaintiff cannot prove that the City's policymakers ratified the June 19, 2012 actions of the individual Defendants as Plaintiff has alleged the event to have occurred. The standard provided in *Praprotnik* requires the authorized policymakers to approve the subordinate's decision <u>and</u> the basis for such decision. *Praprotnik,* 485 U.S. at 127.

Therefore, Plaintiff's allegation of ratification is unfounded and the City is entitled to judgment in its favor.

## Proposition IV: Defendant City's Training and Supervision of its Police Officers is Constitutional.

Plaintiff alleges that Defendant City failed to properly train its officers regarding use of force and failed to properly discipline and/or supervise its police officers. Further, Plaintiff alleges that these failures somehow caused her decedent's constitutional rights to be violated. (Petition, ¶ 41.) Notably, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011). Indeed, a municipality's decisions regarding training will rise to the level of an official government policy for purposes of § 1983 only in limited circumstances. *Id*.

In *Canton v. Harris*, 489 U.S. 378, 388 (1989), the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to a deliberate indifference to the constitutional rights of persons

with whom the police come into contact." The Court further stated:

> In resolving the issue of a city's liability, the focus must be on the adequacy of the training program in relating to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. See *Springfield v. Kibbe,* 480 U.S. at 268 (O'Connor, J., dissenting); *Oklahoma City v. Tuttle, supra,* at 821 (opinion of Rehnquist, J.). It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove than an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 390-91.

In a failure to train constitutional claim, the plaintiff must prove that the training was, in fact, inadequate as well as satisfying the following requirements:

> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situations [sic] with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the party [sic] of the City toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003). Regarding the element of deliberate indifference on the part of the City, the Court stated: "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* at

1229 (quoting *Barney v. Pulsipher,* 143 F.3d 1299, 1307-08 (10th Cir. 1998). Similarly, a "wrongful supervision" claim would require proof of deliberate indifference on the part of the municipality. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 789-90 (10th Cir. 2010) (holding that the City could not be liable for its failure to train or supervise one of its forensic chemists unless the municipal policymakers "can reasonably be said to have been deliberately indifferent to the need" for further training or supervision, citing *Canton*, 489 U.S. at 390).

Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick,* 131 S. Ct. at 1359-60 (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). A municipality must have "notice that a course of training is deficient in a particular respect," which usually requires proof that there was a "pattern of similar constitutional violations by untrained employees." *Id.* at 1360. Finally, the Supreme Court has rejected *respondeat superior* as a basis of liability for a municipality in a § 1983 civil rights case. *Id.*

The City trains its officers on the constitutional limits of the use of force and providing medical care. The individual Defendant Officers received 984 or more hours of training during their police recruit academy. During the training on use of force, the recruit is instructed that he may use only the minimal amount of force necessary to accomplish the arrest. A recruit is also instructed that no amount of physical force will be used on a suspect after they have been taken into custody. (Exhibits 10-12.) Officers are also trained that a person who is injured while being taken into custody is to be provided

medical care. (Exhibits 44 and 50.) After graduating the police academy, recruits receive "in the field" training. Additionally, OCPD Officers receive at least 30 hours of annual in-service training.

Based on this training, Plaintiff is unable to prove that Defendant City's training is inadequate, that it was deliberately indifferent to a known or obvious risk regarding its training, or that any deficiency in the training was a direct cause of any alleged constitutional violation concerning Plaintiff's decedent. Moreover, the OCPD investigates each incident involving a use of force and completes a review process to determine if the use of force complies with OCPD policy.[16] (See Exhibit 44.) This investigation and review process negates any allegation of "deliberate indifference" in regards to the City's training on the use of force.

Plaintiff is also without any evidence indicating that Defendant City failed to appropriately discipline or supervise its officers or that this alleged fault directly contributed to a violation of her decedent's constitutional rights. The City has policies and procedures in place to ensure that OCPD officers are qualified and all officers are appropriately supervised. (OCPD Policy 665.0, Personnel, Exhibit 69; OCPD Procedure 424.0, Recruiting and Employment of Sworn Personnel, Exhibit 70; Exhibit 1.) The City also has policies and procedures to ensure that all officers are appropriately supervised. (OCPD Policy 528.0, Field Supervision, Exhibit 30; Exhibit 37; Exhibit 1.) The City also

---

[16] Such measures are not constitutionally required. See *Wilson v. Meeks,* 52 F.3d 1547, 1557 (10th Cir. 1995), remanded on other grounds and affirmed, 98 F.3d 1247 (10th Cir. 1996).

has policies in place regarding the discipline of its officers. (Exhibit 40.) There is also no evidence suggesting that Defendant City was aware of or should have been aware of some widespread custom of failing to appropriately discipline or supervise its officers and was deliberately indifferent to the need for further supervision.

Defendant City respectfully requests the Court grant it Summary Judgment on all of Plaintiff's 42 U.S.C. § 1983 claims.

### Proposition V: Defendant City cannot be Liable on Plaintiff's State Law Claims.

Plaintiff apparently seeks to hold the City liable under state law based on *respondeat superior* by alleging that the defendant officers committed an assault and battery on Plaintiff's decedent. Petition, ¶¶ 25-26.[17] However, Plaintiff alleges that the officers acted "with malicious intent and outside the scope of their employment." Petition, ¶ 26. Liability of a political subdivision on state law claims is governed by the Governmental Tort Claims Act, 51 O.S. §§ 151-172. The GTCA provides that a municipality may only be liable for the actions of employees that occur in the scope of their employment. 51 O.S. § 153. Defendant City cannot be liable on Plaintiff's assault and battery claims because her allegations of "malicious intent" place the officers' actions outside the scope of their employment. *Jackson v. Oklahoma City Public Schools,*

---

[17] Plaintiff fails to allege who she is asserting her claim of intentional inflection of emotional distress against. Oklahoma courts have ruled that a municipality cannot be liable on this claim as a matter of law because this tort requires proof of a malicious act that necessarily places it outside the scope of an employee's employment. *Parker v. City of Midwest City*, 1993 OK 29, 850 P.2d 1065; *McMullen v. City of Del City,* 1996 OK CIV APP 1996, 920 P.2d 528. Plaintiff's claim of wanton and reckless conduct is not asserted against this Defendant.

2014 OK CIV APP 61, ¶ 9, 333 P.3d 975, 978-979 (stating that political subdivision could not be liable for its employee's assault and battery because "It is settled that intentional torts are outside the scope of employment.")

### Proposition VI: Defendant City cannot be Liable on Plaintiff's State Constitutional Claim.

Plaintiff claims that the City is liable for the defendant officers' alleged use of excessive force pursuant to Okla. Const. Art. 2, § 30, which states "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated…" In *Bosh v. Cherokee County Governmental Building Authority*, 2013 OK 9, 305 P.3d 994, the Oklahoma Supreme Court held that this Article provides a prison detainee with a private cause of action because of a detention officer's excessive force, notwithstanding the exemption in the GTCA that immunizes jails/correctional facilities from liability under state law.

However, the Oklahoma Supreme Court recently held that a *Bosh* claim "for excessive force, as applied to police officers and other law enforcement personnel, may not be brought against a municipality when a cause of action under the OGTCA is available." *Perry v. City of Norman*, 2014 OK 119, ¶ 1, 341 P.3d 689, 689. The Court reasoned that the cause of action created by *Bosh* under the Oklahoma Constitution should not extend to include situations where a plaintiff could have brought a claim against a municipality under the GTCA. *Id.* at ¶¶ 17-19. The Court stated that "employer liability for police officer's alleged excessive force conduct under the OGTCA is well settled" and "the plaintiff's remedy belongs exclusively within the confines of the

OGTCA and a jury's determination concerning whether the police officers were acting within the scope of their employment under the OGTCA." *Id.* at ¶ 19.

Because Plaintiff could have brought a claim for excessive force against the City under the Governmental Tort Claims Act, she may not bring a claim for this same cause of action under the Oklahoma Constitution.

## CONCLUSION

**WHEREFORE**, Defendant City respectfully requests that the Court grant its Motion for Summary Judgment as there is no genuine dispute of any material fact and the City is entitled to judgment as a matter law.

Respectfully submitted,

KENNETH JORDAN
Municipal Counselor

By:  /s/ Richard C. Smith
Richard C. Smith, OBA #8397
Jennifer M. Warren, OBA #30284
Assistant Municipal Counselors
200 N. Walker, Suite 400
Oklahoma City, OK 73102
(405) 297-2451 Fax: (405) 297-3851
rick.smith@okc.gov
jennifer.warren@okc.gov
Attorneys for Defendant City

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of November, 2015, I electronically transmitted the attached Defendant City's Defendant City's Motion for Summary Judgment and Brief in Support to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: E. Ed Bonzie, 8201 South Walker, Oklahoma City, OK 73139, Attorney for Plaintiffs and to Susan Knight, One Leadership Square, Suite 800N, 211 North Robinson Avenue, Oklahoma City, OK 73102, Attorney for Defendants Coffey and Grady, individually.

/s/ Richard C. Smith
Assistant Municipal Counselor

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KIMBERLY TURNER, as Personal )
Representative of the Estate of ROBIN )
LEANDER HOWARD, deceased, )
                   )
          Plaintiff, )
                   )
v. )      Case No. CIV-14-112-W
                   )
CITY OF OKLAHOMA CITY, et al., )
                   )
          Defendants. )

## LIST OF EXHIBITS AND ATTACHMENTS TO DEFENDANT CITY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

1.     Affidavit of Chief Citty

2.     OCPD Recruit Class Syllabus #122 (Defendant Grady)

3.     OCPD Policies 670.0-670.10

4.     OCPD Procedures 431.0-431.10

5.     OCPD Recruit Class Syllabus #125 (Defendant Coffey)

6.     OCPD Training Academy Outline – Laws of Arrest (Class 122)

7.     OCPD Training Academy Outline – Laws of Arrest (Class 125)

8.     OCPD Training Academy Outline – Searching and Transporting Prisoners (Class 122)

9.     OCPD Training Academy Outline – Searching and Transporting Prisoners (Class 125)

10.     OCPD Training Academy Outline – Use of Force (Class 122)

11.     OCPD Training Academy Outline – Use of Force (Class 125)

12. OCPD Training Academy Outline – Custody and Control (Classes 122 and 125)

13. OCPD Training Academy Outline – Observation and Perception (Classes 122 and 125)

14. OCPD Training Academy Outline – Probable Cause (Class 122)

15. OCPD Training Academy Outline – Probable Cause (Class 125)

16. OCPD Training Academy Outline – Human Relations (Class 122)

17. OCPD Training Academy Outline – Human Relations (Class 125)

18. OCPD Training Academy Outline – Patrol (Classes 122 and 125)

19. OCPD Policy 670.20

20. OCPD Procedures 434.0-434.10

21. OCPD Policy 670.30

22. OCPD Procedures 436.0-436.05

23. In-Service Training Record for Defendant Grady

24. 2010 OCPD Phase III In-Service Training

25. In-Service Training Record for Defendant Coffey

26. OCPD Policy 030.0

27. OCPD Procedures 113.0-113.30

28. OCPD Rule 100.0

29. OCPD Rule 105.0

30. OCPD Policy 528.0

31. Affidavit of Captain Byrne

32. Resolution of City Council, July 16, 1985 (enacting Use of Force Policy)

33. OCPD Policies 554.0-554.60

34. OCPD Policy 105.0

35. OCPD Policy 110.0

36. OCPD Policy 120.10

37. OCPD Policies 205.0-205.15

38. OCPD Policy 220.0

39. OCPD Policies 285.0-285.10

40. OCPD Policy 287.0

41. OCPD Policy 505.0

42. OCPD Policy 510.0

43. OCPD Policy 512.0

44. OCPD Procedures 150.0-150.02 & 150.18-150.31

45. OCPD Procedure 160.40

46. Letter from District Attorney Prater, November 2, 2012

47. OCPD Procedures 148.0-148-60

48. OCPD Procedure 143.0

49. OCPD Procedures 170.0-170.70

50. OCPD Procedures 233.0-233.20

51. OCPD Procedures 230.0-230.22

52. OCPD Rule 120.0

53. OCPD Rule 348.0

54. OCPD Rule 470.0

55. CALEA's January 15, 2007 Assessment Report

56.    March 2007 and 2010, Letters of Accreditation from CALEA

57.    Plaintiff's Response to Defendant City's Interrogatories

58.    OCPD CAD Report

59.    Affidavit of OCFD Corporal Smith

60.    OCFD Run Report #12041454

61.    Plaintiff's Response to Defendant City's Requests for Admissions

62.    Medical Records – Robin Howard

63.    Lt. Northcutt's Affidavit

64.    Captain Boxwell's Affidavit

65.    Garfield County "No bail" Warrant for Robin Howard

66.    Medical Examiner's Report

67.    Photos of Robin Howard

68.    OCPD Rule 205.0

69.    OCPD Policy 665.0

70.    OCPD Procedure 424.0


**<u>Attachments</u>**

A.  Order - *Rios v. City of Oklahoma City, et al.*, CIV-87-2383-T

B.  Order - *Franklin v. Thompson, et al.*, CIV-89-1492-T

C.  Order - *Carr v. City of Oklahoma City, et al.,* CIV-01-124-C

D.  Order - *Grigsby v. City of Oklahoma City*, CIV-02-1220-F

E.  Order - *Fuston-Lounds v. City of Oklahoma City, et al.*, CIV-03-1519-T

F.  Order - *Baker v. City of Oklahoma City, et al*., CIV-06-322-L

G.  Order - *Domani v. City of Oklahoma City, et al.,* CIV-10-1256-W

H.  Order - *Coffee v. City of Oklahoma City*, CIV-08-239-W


**<u>Depositions</u>**

Deposition of Turner

Deposition of Grady

Deposition of Coffey