Case 5:14-cv-00112-W Document 74-80 Filed 11/17/15 Page 1 of 6

Kimberly B. Turner, et al. v. City of Oklahoma City, et al.
Deposition of DOUGLAS LEE GRADY

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

**COPY**

KIMBERLY B. TURNER, as          )
Personal Representative of      )
the Estate of ROBIN             )
LEANDER HOWARD, deceased,       )
                                )
        Plaintiff,              )
                                )
vs.                             )   No. CIV-14-112-W
                                )
THE CITY OF OKLAHOMA CITY,      )
OKLAHOMA; JEFF COFFEY,          )
individually and in his         )
official capacity as a          )
police officer; DOUGLAS         )
GRADY, individually and in      )
his official capacity as a      )
police officer; and BILL        )
CITTY, individually and in      )
his official capacity as        )
Chief of Police,                )
                                )
        Defendants.             )


DEPOSITION OF DOUGLAS LEE GRADY

TAKEN ON BEHALF OF THE PLAINTIFF

IN OKLAHOMA CITY, OKLAHOMA

ON OCTOBER 2, 2015


REPORTED BY:  KATHY FOREMAN, CSR #190

Kimberly B. Turner, et al. v. City of Oklahoma City, et al.
Deposition of DOUGLAS LEE GRADY

Page 11

1   and it's hard to have a photographic memory of
2   it.  Would that be fair?
3        A    Yes, sir.
4        Q    And you were able to get his -- get in
5   contact with his wrist, and you were able to
6   bring his hand behind his back?
7        A    Eventually.
8        Q    Okay.  What happened in between the
9   time that you made contact with his wrist and
10  the moment you actually got it behind his back?
11       A    I gave verbal commands to give me his
12  hand and place it behind his back.  He drew his
13  hand, tried to draw it farther underneath him.
14  It was in a downward angle, towards his
15  waistband.  I delivered a strike -- quick strike
16  pressure with my left knee at Mr. Howard's
17  buttocks, to access his sciatic nerve, to gain
18  compliance, by creating a temporary reflexive
19  inhibition.
20       Q    Is that painful to a person that you
21  do that to?
22       A    I can't gauge another person's
23  threshold as far as pain or discomfort goes.
24       Q    Have you ever had that done to you?
25       A    Yes, sir, I have.

Kimberly B. Turner, et al. v. City of Oklahoma City, et al.
Deposition of DOUGLAS LEE GRADY

Page 13

1   Q    And the part of your body that was in
2   contact with him was your knee?
3   A    I don't understand exactly.  Could you
4   rephrase?
5   Q    Well, I'm not -- I want to know how
6   you were applying your body weight.  You weren't
7   lying down on the guy, were you?
8   A    No, sir.
9   Q    How were you applying your body
10  weight?
11  A    Straight down on the back of his right
12  thigh.
13  Q    And that would be with your knee?
14  A    That would be with basically my core,
15  my torso.
16  Q    Okay.  And I think you said he tried
17  to pull his hand down, and I take it since you
18  had ahold of his wrist, he wasn't successful.
19  You were able to overcome and pull his hand out?
20  A    No, his hand was already underneath
21  him.  Whenever I straddled his leg, his hand was
22  underneath him, reaching into his waistband
23  area.  I grabbed ahold of his wrist and ordered
24  him to give me his hands; at which point he
25  didn't and tried to draw it further underneath

Case 5:14-cv-00112-W   Document 74-80   Filed 11/17/15   Page 4 of 6

Kimberly B. Turner, et al. v. City of Oklahoma City, et al.
Deposition of DOUGLAS LEE GRADY

Page 14

1   him. I felt his arm tense, so I delivered quick
2   strike pressure to the buttocks to access that
3   sciatic nerve, which was successful. At that
4   point I was able to retrieve his hand from
5   underneath him and place it behind his back.
6       Q    Were you able to get his right hand
7   behind his back before your fellow officer was
8   able to get his left hand behind his back?
9       A    I don't recall exactly which hand got
10  back there first. I think it was about the same
11  time or a small time difference between the two.
12      Q    Which of you actually applied the
13  cuffs?
14      A    I believe Sgt. Coffey applied the
15  cuffs.
16      Q    And was it Sgt. Coffey's cuffs that
17  were used?
18      A    Yes, sir.
19      Q    Were there any other officers on the
20  scene at this point?
21      A    Sgt. Anderson and Sgt. Bell were on
22  the scene.
23      Q    Sgt. Bell was your partner; is that
24  correct?
25      A    Yes, sir.

Case 5:14-cv-00112-W   Document 74-80   Filed 11/17/15   Page 5 of 6

Kimberly B. Turner, et al. v. City of Oklahoma City, et al.
Deposition of DOUGLAS LEE GRADY

Page 78

1    A    No, sir.

2    Q    Thank you, sir. I have no further
3    questions.

                    CROSS-EXAMINATION
5    BY MS. WARREN:

6    Q    When you were on the scene following
7    this incident, did you have any conversations
8    with any of Mr. Howard's family members?

9    A    Yes, sir, I did.

10   Q    Who did you speak to?

11   A    I spoke to a lady that I later
12   believed to be his mother.

13   Q    Did you also believe that she was the
14   owner of the vehicle that Mr. Howard was driving
15   that day?

16   A    Yes, ma'am.

17   Q    What did you say to her?

18   A    She arrived on scene, asking me about
19   the vehicle. I told her that it had just been
20   involved in a vehicle pursuit with officers. At
21   which point, she asked who was driving. I had
22   learned the subject's name was Robin. I told
23   her, "Robin." I believe she said that that was
24   her son.

25        Then she asked me how to get her car

Case 5:14-cv-00112-W   Document 74-80   Filed 11/17/15   Page 6 of 6

Kimberly B. Turner, et al. v. City of Oklahoma City, et al.
Deposition of DOUGLAS LEE GRADY

Page 79

1     out of impound.
2         Q    Did you ever tell her that her son was
3     going to be taken into custody?
4         A    I told her he was going to jail.
5              MS. WARREN:  No further questions.
6              MR. BERKOWITZ:  I have no further
7     questions.
8              MS. KNIGHT:  He'll read and sign.
9              (Concluded at 3:15 p.m.)