## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KIMBERLY B. TURNER, as Personal )
Representative of the Estate of ROBIN )
LEANDER HOWARD, deceased, )
           )
        Plaintiff, )
           )
v. )      Case No. CIV-14-112-W
           )
THE CITY OKLAHOMA CITY, )
OKLAHOMA; JEFF COFFEY, )
Individually and in his official capacity )
as a police officer; DOUGLAS GRADY, )
individually and in his official capacity )
as a police officer, and BILL CITY, )
individually and in his official capacity as )
Chief of Police )
           )
        Defendants. )

## PLAINTIFF'S RESPONSE AND OBJECTION TO CITY OF OKLAHOMA CITY'S MOTION FOR SUMMARY JUDGMENT

E. Ed Bonzie, OBA# 15190
E. Ed Bonzie, P.C.
8201 S. Walker
Oklahoma City, OK 73139
405-631-1021
405-616-2488 Fax
Ed@edbonzielaw.com
Attorney for Kimberly Turner as
Personal Representative of the
Estate of Robin Leander Howard,
Deceased

Dated: December 24, 2015

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.......................................................................... i,ii
TABLE OF AUTHORITIES.................................................................. iii,iv
PLAINTIFF'S INTRODUCTORY STATEMENT OF FACTS.....................1
PLAINTIFF'S RESPONSE TO THE CITY'S FACTS.................................3
ARGUMENT AND AUTHORITY...............................................................6

     PROPOSITION I ...............................................................................6

          SUMMARY JUDGMENT IN DEFENDANTS'
          FAVOR IS NOT WARRANTED IN THE
          INSTANT MATTER..............................................................6

     PROPOSITION II .............................................................................7

          WHETHER THE CITY'S OFFICERS VIOLATED
          ROBIN HOWARD'S FOURTEENTH AMENDMENTS
          RIGHTS IS TO BE DETERMINED BY THE
          JURY......................................................................................7

     PROPOSITION III ...........................................................................9

          THERE ARE QUESTIONS OF FACT CONCERNING
          THE CITY OF OKLAHOMA CITY'S PRACTICES AND
          CUSTOMS..............................................................................9

     PROPOSITION IV...........................................................................12

          BECAUSE THE CITY FAILS TO DENY THAT IT
          RATIFIED THE OFFICERS' ACTIONS, IT CREATES
          AN ISSUE OF MATERIAL FACT WHICH SHOULD
          PRECLUDE SUMMARY JUDGMENT...............................12

     PROPOSITION V.............................................................................18

          GENUINE ISSUES OF MATERIAL FACT EXISTS
          AS TO WHETHER THE TRAINING AND/OR
          SUPERVISION OF COFFEY AND GRADY WAS
          INADEQUATE......................................................................18

PROPOSITION VI.............................................................................20

      PLAINTIFF CONCEDES THAT THE
      GOVERNMENTAL TORT CLAIM ACT SHIELDS
      THE CITY FROM PLAINTIFF'S CLAIM OF
      ASSAULT AND BATTERY WITH MALICE....................20

PROPOSITION VII..........................................................................23

      BECAUSE THERE IS NO CAUSE OF ACTION
      AGAINST THE CITY UNDER THE OGTCA,
      PLAINTIFF CAN BRING A BOSH CLAIM
      AGAINST THE CITY...........................................................23

*Ashe v. Corley,* 992 F. 2d 540, 544 (5th Cir. 1993)....................................13

*Bd. of Cnty. Comm'rs* v. *Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)..........................................................................................10

*Bolden v. PRC Inc.*, 43 F. 3d 545, 548 *(*10th Cir. 1994)........................................6

*Bosh v. Cherokee County Building Authority,* 2013 OK 9, 305 P. 3d 994, 997...........23,24

*Brown v. Gray*, 227 F. 3d 1278, 1287 (10th Cir. 200)........................................18

*Brown, 520 U.S. at 430, 117*...............................................................10

*Bryson v. City of Oklahoma City*, 627 F. 3d 784, 789 (10th Cir. 2010)......................20

*Butcher v. McAlester*, 956 F. 2d 973, 977 n. 2 (10th Cir. 1992) ...........................15

Canton v. Harris, 489 U.S. 378, 390 (1980)................................................20

*Carr v. Castle*, 337 F. 3d 1221, 1229 (10th Cir. 2003)....................................18

*Carswell v. Oklahoma State University*, 1999 OK 102, ¶ 17,995 P. 2d 1118.............20,21

*Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) ....................................6,13

*Cf. Langley v. Adams County, Colo.*, 987 F. 2d 1473, 1476 (10th Cir. 1993)...............13

*City of St Louis v. Praprotnik* , 485 U.S. 112, 127 (1988).........................15,16,17

*City of Revere v. Massachusetts Gen Hospital, 463 U.S. 239, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983)*...............................................................................8

*City of Canton v. Harris,* 489 U.S. 378, 389, 109 s. Ct. 1197, 103 L. Ed. 2d 412 (1989).10

*Clark v. Coats & Clark, Inc.*, 929 F. 2d 604, 608 (11th Cir. 1991)........................13

*Cordova v. Aragon*, 569 F. 3d 1183, (10th Cir. 2009)......................................19

*Crockett v. Mckenzie*, 867 P.2d 463, 464 (Okl. 1994)......................................7

*Decorte v, Robinson*, 1998 OK 87, ¶12, 969 P. 2d 358.....................................21

*Estelle v. Gamble , 429* U.S. 97, 104, 97 S. Ct., 285, 291, 50 L. Ed. 2d 251 (1976)........8

*Fehring v. State Ins. Fund,* 2001 OK 11, 19 P. 3d 276.....................................21

*Flick v. Crouch,* 434 P.2d 256, 262 (Okl. 1967)...........................................6

*Fox v. Oklahoma Memorial Hospital,* 774 P.2d 459, 462 (Okl. 1989).........................6

*Hadnot v. Shaw,* 826 P.2d 978, 985 (Okl. 1992*)*.........................................7

*Hansen v. Boyd,* 161 U. S. 397, 411 (1896)...............................................12

*Hom v. Squire,* 81 F. 3d 973, (10th Cir. 1996)............................................6

*Luttjohaun v. Goodyear Tire & Rubber Co.*, 938 F. Supp. 694, 696 (D. Kan. 1996)........13

*Melton v. City of Oklahoma City,* 879 F. 2d 706, 724 (10th Cir. 1989)....................16

*Monell v. Department of Social Services,* 436 U.S. 658, 691-92, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)........................................................................10

*Mustain v. Grand River Dam Auth., 2003 OK 43,*¶ 21, 68 P. 3d 991...........................20

*Morales v. City of Oklahoma City,* 230 P.3d 869 (Okl. 2010).............................20,21

*Myers v. County of Orange,* 157 F.3d 66, 74 -76 (CA2 1998)................................17

*Nail v. City of Henryetta*, 1996 OK 12, ¶ 10, 911 P. 2d 914...............................20

*Pellegrino v. State ex rel. Cameron University,* 2003 OK 2, ¶1, 63 p.3d 535..............20

iii

*Perry v. City of Norman*, 2014 OK 119, 341 P.3d 689......................................................24

*Phelps v. Hotel Management, Inc.,* 925 P.2d 891(Okl. 1996)............................................6

*Russ v. International Paper Co.*, 943 F. 2d 589, 592 (5th Cir. 1991) ...............................13

*Salazar v. City of Oklahoma City*, 1999 OK 20, 976 P. 2d 1056, 1066...........................22

*Schneider v. City of Grand Junction Police Dept,* 717 F.3d 760 (2013).........................12

*Shepherd v. Compsource Okla*., 2009 OK 25, 28, 209 P. 3d 288 (Okla., 2009)..............14

*Simmons v. United Health Care Special Serv. Dist.*, 506 F. 3d 1281, 1285-1286 (10th Cir. 2007).......................................................................................................................................16

*Starrett v. Wadley*, 876 F. 2d 808, 818 (10th Cir. 1989).....................................................16

*Trainer v. Apollo Metal Specialities, Inc.,* 318 F. 3d 976, 981 10th Cir., 2002*)*................14

*Tuffy's Inc. v. City of Oklahoma City,* 212 P.3d 1158, 1167 (Okla. 2009)......................21

*Walker v. City of Orem,* 451 F. 3d 1139, 1152 (10th Cir. 2006)......................................10

*Washington v. Berry*, 2002 OK 45, 55 P. 3d 1036......................................................23,24

*Wulf v. City of Wichita,* 883 F. 2d 842, 868 (10th Cir. 1989)............................................16

# IN THE UNITED STATES DISTRICT COURT OF OKLAHOMA
# WESTERN DISTRICT OF OKLAHOMA

KIMBERLY B. TURNER and LONZETTA )
MORRISON, as Personal Representatives )
of the Estate of ROBIN LEANDER )
HOWARD, deceased, )
                        )
           Plaintiffs, )
                        )
v. ) Case No. CIV-14-112-W
                        )
THE CITY OF OKLAHOMA CITY, JEFF )
COFFEY, Individually and in his official )
capacity, ET AL., )
                        )
           Defendants. )

## PLAINTIFF'S RESPONSE AND OBJECTION TO CITY OF OKLAHOMA CITY'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, above-named, by and through her attorney of record,

E. Ed Bonzie, and objects to the Motion For Summary Judgment filed herein by Defendant

City of Oklahoma City on the grounds that there are substantial material issues of fact

sufficient enough to preclude summary judgment in this case. In support thereof, Plaintiff

submits the following brief.

## INTRODUCTORY STATEMENT OF FACTS

Plaintiff filed this lawsuit on behalf of the estate of her brother, Robin Howard,

deceased. Robin Howard was a fifty-four (54) years old man who was living with his

mother, who is an Alzheimer's patient in Oklahoma City. Robin Howard was five feet eight inches(5'8") tall, and one hundred and thirty-nine (139 ) pounds. On June 19, 2012, Robin Howard was driving his mother's car, a Lincoln town car, to attend a doctor's appointment. *En route*, Robin Howard decided to pick up a friend to accompany him to the doctor's appointment. Howard came to an intersection, and failed to stop at the stop sign. The police saw Howard's traffic violation, and attempted to stop Howard. Because Howard was driving with a suspended driver's licence, he did not stop and a low-speed police chase ensued.

During the pursuit, Howard side swiped another vehicle at a low impact and continued traveling through the neighborhood. He drove through the backyard of a residence and struck a clothesline post also at a low impact. Howard exited the car and tried to flee on foot. Howard attempted to jump a chain-link fence. Officer Jeffrey Coffey followed Howard on foot for a short distance and caught up with him when Howard tried to jump the fence. Officer Coffey immediately took Howard to the ground with Howard's hands pinned under his belly. Officer Coffey was joined by Officer Grady and in their attempt to arrest Howard, applied knee strikes and punched Howard in the ribs for about three or four times before he was taken into custody.

At the scene of the incident, the emergency response team that showed up was turned away by the police officers without checking on Howard. However, when the officers took  Howard into custody, he was not taken to the county jail. Rather, he was

taken to the Integris Southwest Medical Center where Howard was admitted, and diagnosed with fracture of four (4) ribs; fracture of left humerus; fracture of two (2) lumbar vertebrae; and a punctured left lung. Howard died five (5) days later in the intensive care unit of the hospital. The Medical Examiner attributed the cause of death as "chest trauma, blunt force" and manner of death as "homicide". Howard's medical records show that he contracted pneumonia as a result of the punctured lung which he was treated for, and ultimately caused his death.

## PLAINTIFF'S RESPONSE TO THE CITY'S FACTS

In response to Defendant's Material Facts Not In Dispute, Plaintiff shows this Court as follows:

**Response To City's Facts 1-8:**     The facts as presented are not contested, but are irrelevant to the issues in this case. As a result, Defendant City's facts 1-8 are not at issue and Plaintiff, for the purposes of this case, does not contest such facts.

**Response To City's Facts 9-13:**   These facts are not contested for purposes of this motion, but irrelevant to any issues of use of force or timely provision of medical treatment.

**Response To City's Facts 14-17:**     These facts are not contested for purposes of this motion, but are irrelevant to the use of force and timely provision of medical treatment.

**Response To City's Facts 18-19:**     These facts are not contested by this Plaintiff for

purposes of this motion, but they are irrelevant to the issues in this case.

**Response To City's Facts 20**:     Admitted that this is the Plaintiff's testimony, however, Plaintiff disputes the fact that Plaintiff's decedent refused treatment.

**Response To City's Facts 21:**     Admitted.

**Response To City's Facts 22:**     Plaintiff disputes that when Officer Coffey pulled Robin Howard from the fence, he fell on him. Robin Howard gave a statement at the hospital that as soon as Officer Coffey pulled him down from the fence, "he just started wailing on me like, and was beating the hell out me". Transcript of Robin Howard's statement p. 2 lines 1- 44; p. 3, lines 6- 10, marked as Exhibit No. 1. Additionally, the four eye- witnesses, Gerardo Ramos, Catalina Montiel, Nerick Limon, and Jessica Limon all testified that Officer Coffey pulled Robin Howard down from the fence and began beating and punching him. See the depositions of Ramos, Exhibit 2; Deposition of Montiel, Exhibit 3; Deposition of Nerick Limon, Exhibit 4; Deposition of Jessica Limon, Exhibit 5

**Response To City's Facts 23:**     Admitted

**Response To City's Facts 24:**     Plaintiff disputes that Robin Howard managed to get into a "runner's stance", in that,  Robin Howard gave a statement at the hospital that as soon as Officer Coffey pulled him down from the fence  Robin Howard stated in his interview with Lt Ryan Boxwell on June 25, 2012, that when Officer Coffey caught up with him at the chain link fence, "he just started wailing on me like, and was beating the hell out him", which would appear to make it impossible for Robin Howard to get into a

4

"runner's stance". Transcript of Robin Howard's statement p. 2 lines 1- 44; p. 3, lines 6-10, marked as Exhibit No. 1. Additionally, the four eye- witnesses, Gerardo Ramos, Catalina Montiel, Nerick Limon, and Jessica Limon all testified that Officer Coffey pulled Robin Howard down from the fence and began beating and punching him. See the depositions of Ramos, Exhibit 2; Deposition of Montiel, Exhibit 3; Deposition of Nerick Limon, Exhibit 4; Deposition of Jessica Limon, Exhibit 5; These witnesses saw the beating from the beginning to when they put Howard in the police cruiser and did not testify to seeing him getting in a "runner's stance".

**Response To City's Facts 25-26:**     Admitted.

**Response To City's Facts 27**:     Plaintiff disputes the fact that Howard refused treatment by EMSA at the scene of the arrest, in that, the eye witnesses testified that the EMSA paramedics were approached by one of the police officers and waived him off to leave, so the ambulance left without them speaking to Howard, or stepping down from the ambulance. See the depositions of Ramos, Exhibit 2; Deposition of Montiel, Exhibit 3; Deposition of Nerick Limon, Exhibit 4; Deposition of Jessica Limon, Exhibit 5; These witnesses saw the beating from the beginning to when they put Howard in the police cruiser and did not testify to seeing him getting in a "runner's stance".

## ARGUMENT AND AUTHORITY

## PROPOSITION I

## SUMMARY JUDGMENT IN DEFENDANTS' FAVOR
## IS NOT WARRANTED IN THE INSTANT MATTER

This Court must consider all of the evidence in the light most favorable to the non-movant before it can determine that there are no genuine issues of material facts with respect to Plaintiff's essential elements of her case. *Bolden v. PRC Inc.,* **43 F. 3d 545, 548 (10th Cir. 1994)**. The law regarding summary judgment in Oklahoma is clear. "Summary Judgment is only proper if the pleadings, discovery products on file, and affidavits, show that there are no genuine issues of material facts and that the movant is entitled to judgment as a matter of law. *"Phelps v. Hotel Management, Inc.,* **925 P.2d 891(Okl. 1996);** *Fox v. Oklahoma Memorial Hospital,* **774 P.2d 459, 462 (Okl. 1989)**. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp. v. Catrett,* **477 U.S. 317, 323 (1986)**. The purpose of summary judgment is to avoid useless trials. *Flick v. Crouch,* **434 P.2d 256, 262 (Okl. 1967)**. However, trial is only useless where reasonable persons might not reach different conclusions from the undisputed facts. *Id*.

However, the district court must resolve all reasonable doubts about the facts in favor of the non-movant. *Hom v. Squire,* **81 F. 3d 973, (10th Cir. 1996)***;* It is therefore imperative for the movant for summary judgment to prove that there is no genuine issue about any material fact, and that the movant is entitled to judgment as a matter of law. *Id*.

A fact is material if proof of the fact would establish or refute one of the essential elements of the cause of action asserted. *Hadnot v. Shaw,* **826 P.2d 978, 985 (Okl. 1992***)*. On the other hand, a substantial controversy exists when reasonable persons could reach different conclusions from the undisputed facts. *Crockett v. Mckenzie,* **867 P.2d 463, 464 (Okl. 1994***)*. This case is particularly not suited for summary judgment given that issues involving Fourth Amendment unreasonable seizures (use of excessive force cases, the provision of medical treatment at the scene of the arrest are issues to be determined by the jury as presented..

<u>**PROPOSITION II**</u>

**Whether The City's Officers Violated Robin Howard's Fourteenth Amendment Rights Is To Be Determined By The Jury**

The Plaintiff in this case has presented this Court with genuine issues of material fact as to whether the constitutional rights of Robin Howard were violated by the City Police Officers Coffey and Grady. Specifically, Plaintiff has shown facts, which, taken in a light most favorable to Plaintiff, demonstrate that Officers Coffey, and Grady knowingly had EMSA paramedics who responded to the scene of the arrest leave without treating or speaking with Robin Howard.

Although, the City asserts that Officer Coffey or his partner summoned EMSA, and because Robin Howard refused any treatment from the fire paramedics, EMSA was sent away. However, both Coffey and Grady have testified in depositions that neither Sgt Coffey nor Sgt Grady explicitly heard Howard refuse treatment, and that both overheard

7

firemen say Howard had refused treatment. See Exhibit 6, Deposition of Coffey, pp. 40; Exhibit 7, Deposition of Grady, pp. 19-20. As a result, Coffey then offered to transport Howard to the hospital. Plaintiff has demonstrated to this Court that first, the eye witnesses saw the police vehicles and an ambulance with EMSA at the scene of the arrest. See Exhibits #3, Depositions of Montiel and relevant pages; Exhibit # 2, Deposition of Ramos, and relevant pages; Exhibit # 4, Deposition of Nerick Limon, and relevasnt pages.

Specifically, police officers have duty to make sure persons in their custody receive medical care. *Estelle v. Gamble , 429* U.S. 97, 104, 97 S. Ct., 285, 291, 50 L. Ed. 2d 251 (1976). Further, the duty to provide access to medical care extends to pretrial detainees as well. *City of Revere v. Massachusetts Gen Hospital, 463 U.S. 239, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983)*.

In this case, all the eye witnesses to the arrest of Robin Howard have testified that they saw the ambulance arrive at the scene of the arrest after Howard had been placed in custody. See Plaintiff's Exhibits #s 2-5, Depositions of Catalina Montiel, Deposition of Grardo Ramos, Deposition of Nerick Limon, and Deposition of Jessica Limon.. The witnesses also testified that the Emergency Medical Technicians (EMT) did not get down from the ambulance, but were rather met by one of the arresting of Officers who ordered the EMTs to leave. See Exhibit #2; Exhibit #3; Exhibit #4; Exhibit #5.

However, Defendants contend that it was the Fire Department personnel, rather

than Coffey or Grady who told the officers that Howard refused treatment and therefore released EMSA. Interestingly, none of the eyewitnesses saw any fire trucks, nor did they see any officers in a Fire Department Uniform approach the EMSA. It was rather a police officer that witnesses saw approach EMSA, and dismissed the ambulance. See Exhibit 5, Jessica Limon, p. 32ln 21-25.  Jessica Limon actually testified that " [A]n officer had went away from the group and spoke to the person in the ambulance. The ambulance person did not even step out of the vehicle. He – I mean, he might have took one step down off of that truck, but the officer– I don't know what he said, but they left." Exhibit 5,  p. 25, Lns 5-10.

Plaintiff respectfully submits that a jury reviewing theses facts could reasonably find that the arresting Officers ordered the EMSA personnel to leave without treating Robin Howard, and that their conduct showed deliberate indifference to Howard's Constitutional rights. Specifically, the eye witnesses testimony establishes facts which taken in a light most favorable to Plaintiff, demonstrates that Coffey and Grady violated Robin Howard's Constitutional rights and creates a genuine issue of material facts sufficient to preclude summary judgment.

## PROPOSITION III

### There Are Questions Of Fact Concerning The City Of Oklahoma City's Practices and Customs

To succeed in a §1983 claim against a municipality, a plaintiff must show two elements: " (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation."

*City of Canton v. Harris,* **489 U.S. 378, 389, 109 s. Ct. 1197, 103 L. Ed. 2d 412 (1989)**;

*Walker v. City of Orem,* **451 F. 3d 1139, 1152 (10th Cir. 2006);** *Bd. of Cnty. Comm'rs* **v.**

***Brown*****, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997);** *Monell v.*

*Department of Social Services,* **436 U.S. 658, 691-92, 694, 98 S.Ct. 2018, 56 L.Ed.2d**

**611 (1978).** In *Monell,* the Court held that a plaintiff must identify "a government's policy

or custom" that caused the injury. In later cases, the Supreme Court required a plaintiff to

show that the policy was enacted or maintained with deliberate indifference to an almost

inevitable constitutional injury. See ***Brown***, **520 U.S. at 403, 117**

In the case at bar, as fully set forth in the facts herein, as well as in the response to

Defendants Coffey and Grady's motion for summary judgment, Plaintiff has shown that

Coffey and Grady committed a constitutional violation, in that, the nature and extent of

Howard's injuries clearly shows the force used to arrest Robin Howard was not

"objectively reasonable", and Robin Howard was denied emergency medical care at the

scene of the arrest when EMSA responded to the incident.

Therefore, the problem with the City's policy and practices becomes evidence in

the testimony of the eye witnesses who all testified that they saw Robin Howard being

beaten, and punched indicating that the use of force was objectively unreasonable.

Additionally, the police practices expert also testified that due to the nature and extent of

the injuries the force used to arrest Howard was not "objective reasonable". Clearly, the

testimony of the witnesses show that Robin Howard was punched in the ribs and stomach

several times by Coffey and Grady when Howard was pulled down from the fence. See statement of Howard Exhibit # 1; Deposition of Montiel, Exhibit # 2; Exhibit #3, Deposition of Nerick Limon; and Exhibit #5, Deposition of Jessica Limon. The testimonies show that the beating continued even after Howard was handcuffed. Exhibit #5, Deposition Jessica Limon, pp. 30 lns 20-25.

Secondly, The City has set forth the policies it has put in place for those instances in which use of force to effect an arrest is administered, and when the provision of emergency medical treatment is necessary, and for the most part, those policies accurately reflect the applicable law in this area of jurisprudence.

However, the issue avoided by the City in its analysis of this subject of the use of excessive force against Robin Howard, is whether the officers' actions in this case were within the guidelines of the City's policies, and customs, and if not did the City condone or condemn such actions. In this case, the City investigated Coffey and Grady's actions involving use of force and approved those actions through its "Use of Force "process, and through an Administrative Investigation approved by the chief of police and by the City's action (through the City Council) to provide a defense for Coffey and Grady in this case.

The latter point is particularly significant in that the decision to provide a defense to a government employee is considered a ratification of the employee's action given the nature of the process that precedes such a decision. A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally

promulgated policy, a well-settled custom or practice, a final decision by a municipal

policymaker, or deliberately indifferent training or supervision. ***Schneider v. City of***

***Grand Junction Police Dept,*** **717 F.3d 760 (2013).**

Because the City admits that Coffey and Grady's actions were in accord with the

established customs and practices of the City, and the injuries suffered by Robin Howard

showed that the use of force by the officers was not "objectively reasonable", the City's

custom or practice are unconstitutional and actionable.

## PROPOSITION IV

### The City's Failure  To Concede That It Ratified The Officers' Actions, Creates An Issue Of Material Fact Which Should Preclude Summary Judgment

It is well established that ratification is a fact-based jury question capable of being

proven by circumstantial evidence. When, as here, there is evidence supporting the

elements, ratification should [be] submitted to the jury." ***Hansen v. Boyd, 161 U. S. 397,***

***411 (1896)***.

In Proposition I of City's Motion for Summary Judgment, p. 15, the City denies

that the Defendant Officers committed any Fourteenth Amendment Constitutional

Violation but asserts that it cannot be held liable for ratification of Defendant Officers'

actions. The City argues that "Plaintiff does not have any evidence of ratification of the

events as Plaintiff alleges them to have occurred. City's Motion , p. 21. Additionally, the

City argues that ratification is not a viable constitutional theory for municipal liability in a

§ 1983 excessive force cases.

The issue with the City's contention is that a bald statement of "no evidence" unsupported by any reference to the record is insufficient to support summary judgment. See *Celotex Corp. v. Catrett*, **477 U.S. 317, 328 (1986)** ([T]he movant must discharge the burden the rules place on him: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that plaintiff has no evidence to prove his case."). *Cf. Langley v. Adams County, Colo., 987 F. 2d 1473, 1476 (10th Cir. 1993)* (The moving party claiming a lack of evidence must "point to those portions of the record which demonstrate an absence of a genuine issue of material fact"). This requirement is explained in *Luttjohaun v. Goodyear Tire & Rubber Co.*, **938 F. Supp. 694, 696 (D. Kan. 1996):**

> [T]he court has before it little more than an allegation that plaintiff cannot prove her claims. This may be true, but it has not been established in the record before the court. Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment. See *Ashe v. Corley,* **992 F. 2d 540, 544 (5th Cir. 1993)**('a mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden' on summary judgment); *Russ v. International Paper Co.*, **943 F. 2d 589, 592 (5th Cir. 1991)** (the Court in *Celotex [Corp.v. Catrett]*, **477 U.S. 317 (1986)],** did not hold that any time a party with the burden of proof at trial is faced with a motion for summary judgment it must come forward with competent evidence to support its theory of liability, regardless of what showing the movant has made.') *Clark v. Coats & Clark, Inc.*, **929 F. 2d 604, 608 (11th Cir. 1991)** (Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial.').

Thus, the mere allegation that Plaintiff lacks evidence is insufficient to meet the City's burden of showing an absence of evidence. The City was required to either offer

affirmative evidence denying that it ratified Coffey and Grady's actions or to point to the portions of the record showing a lack of evidence on this point. The City has done neither and therefore its motion on this basis must fail. ***Trainer v. Apollo Metal Specialities, Inc., 318 F. 3d 976, 981 10th Cir., 2002)*** ( if "the moving party fails in its initial burden of production, the nonmoving party has no burden at all and summary judgment should [be] denied."). Nonetheless, there is ample evidence of ratification by the City in this case.

The City investigated Coffey and Grady's actions involving use of force and the provision of medical treatment for Robin Howard at the scene of the arrest, both through its "Use of Force" process, and through an Administrative Investigation approved by the Chief of Police and by the City's action (through the City Council) to provide a defense for Coffey and Grady in this case. It is important to note that the decision to provide a defense to a government employee is considered a ratification of the employee's action given the nature of the process that precedes such a decision:

> Ratification is defined as the giving of sanction and validity to something done by another. Woodruff v. Woodruff, 1951 OK 368, 380, 206 Okla. 3, 240 P. 2d 74, 78. In cases involving allegedly tortious acts or decisions by the employees of governmental entities, ratification occurs in the course of the claim review process provided by the Governmental Tort Claims Act, 51 O.S. 2001 and Supp. 2008 §151 through 200. In review of a claim, the governmental entity must decide whether the alleged tort-feasor employee has acted within the scope of employment. 51 O.S. 2001 § 157. This determination is a predicate to the defense of the employee. 51 O. S. 2001 §162(A)(1), The case of Wilson v. City of Tulsa, 2004 OK CIV APP 44, 91 P.3d 673, discusses the effect of a governmental entity ratifying a decision to terminate an employee that contrary to a policy forbidding the termination. ***Shepherd v. Compsource Okla***., **2009 OK 25, 28, 209 P. 3d 288 (Okla., 2009).**

Further, another state statute which requires pre-approval of city employees' actions is 11

O. S. §23-102 (Defense of municipal employee–procedure for request and defense)

provides in relevant part:

> If a municipality is to defend a municipal employee in a civil action or special proceeding as provided for in section 23-101 of this title, the following procedure shall apply:
>
> 2.     Before any defense is initiated, an inquiry shall be made by the municipal governing body of the facts upon which the action or special proceeding is based. Unless the governing body determines that the employee was acting in good faith and in the course of his employment, representation shall not be provided pursuant to the provisions of section 23-01 of this title:..

Accordingly, it is clear that a prima facie case of ratification exists by the decision of

the City Council to provide a defense in this case as well as by the actions of the Chief of

Police in approving Coffey and Grady's use of force.

Certainly, ratification as a basis for municipal liability was recognized in ***St Louis v.***

***Praprotnik,*** **485 U.S. 112, 127 (1988)** ("If the authorized policymakers approve a

subordinate's decision and the basis for it, their ratification would be chargeable to the

municipality because their decision is final.").

In ***Butcher v. McAlester***, **956 F. 2d 973, 977 n. 2 (10th Cir. 1992)** the Tenth Circuit

recognized that ratification is an alternative basis for liability which does not require the

showing of a policy or custom:

> In other words, in a §1983 proceeding the municipality must itself be at fault, and it is not, under respondeat superior, responsible for the isolated torts of its employees. However, in a §1983 proceeding a municipality is liable for the actions of an employee who is not a final policymaking authority if a widespread practice exists to the end there is a 'custom or usage

15

with the force of law,' or a final policymaker ratifies a subordinate's recommendation, and the basis for it, thus rendering a final decision chargeable to the municipality. ***City of St Louis v. Praprotnik*** , **485 U.S. 112, 127 (1988).** The foregoing has been recognized by us in ***Wulf v. City of Wichita,*** **883 F. 2d 842, 868 (10th Cir. 1989) and *Melton v. City of Oklahoma City,* 879 F. 2d 706, 724 (10th Cir. 1989) rehearing en banc on other grounds, 928 F. 2d 920 (10th Cir. 1991), cert. denied, 112 S. Ct. 296 (1991). *Butcher* at 977** (emphasis supplied**).**

Municipal liability is not limited to those wrongs which were directed to occur by the municipality but also to wrongs which the municipality has chosen to approve or sanction.

In ***Pembaur*** and ***Praprotnick*** the Court emphasized that municipal liability is limited to 'acts that are , properly speaking, acts, "of the municipality"– that is, acts which the municipality has officially sanctioned or ordered.' ***Starrett v. Wadley***, **876 F. 2d 808, 818 (10th Cir. 1989)**.

The City argues that Plaintiff has to prove the City's ratification of Defendants' actions through a direct causal link between a policy of the City. Certainly, the City has never denied that Coffey and Grady followed the written policies for the use of force, and the provision of medical treatment for arrested persons. See City's Statement of Undisputed Material Facts ¶¶ 9 and 10.

A City's liability for approval of unconstitutional actions taken in violation of official policy was explained in ***Simmons v. United Health Care Special Serv. Dist.***, **506 F**. **3d 1281, 1285-1286 (10th Cir. 2007)**:

[Municipal liability] must include even actions by final policymakers taken in defiance of a policy or custom that they themselves adopted. Were the rule of law different, we would invite irrational results. Holding municipalities immune from liability whenever their final policymakers disregard their own

written policies would serve to encourage city leaders to flout such rules. Policymakers, like the members of the Board before us, would have little reason to abide by their own mandates.... and indeed an incentive to adopt and then proceed deliberately to ignore them. Such a rule of law would thus serve to undermine rather than enhance Section 1983's purposes. See ***City of St Louis v. Praprotnik*** , **485 U.S. 112, 127 (1988).**

A constitutionally adequate written excessive force policy will not immunize the City when it ratifies an unconstitutional use of force in violation of such policy. In the case at bar, the final decision-making authority required to approve the actions of the officers have been identified as the City Council, and the Chief of Police. Upon presentation of the facts in this case to the City, there was an administrative review containing information about the nature and extent of Robin Howard's injuries and his claim that the officers were wailing on him, and beating the hell out of him. Being fully advised of the facts and particularly of the physical evidence which supported Howard's account, and refuted by Coffey and Grady, the City decided to approve the use of force both through the administrative investigation. This can easily be viewed by the jury as a decision to ratify the use of force despite knowing that the force used was excessive, or the jury can find that the City knows that Coffey and Grady beat Howard and decided to approve that conduct regardless of whether it conformed to written policy or constitutional standards. Therefore, the question of ratification is on of fact, not law, and is reserved for the jury.

[I]n cases asserting municipal liability for harm caused by unconstitutional policies, judges determine whether the alleged  policies were unconstitutional, while juries find whether the policies in fact existed and whether they harmed the plaintiff. ***Myers v. County of Orange,*** **157 F.3d 66, 74 -76 (CA2 1998).**

The evidence showing the City's approval of the officers' actions presented

supports municipal liability, therefore, the City's motion must be denied.

## PROPOSITION V

### Genuine Issues of Material Fact Exists As To Whether The Training And/Or Supervision Of Coffey And Grady Was Inadequate

In order to prevail on her claims against the City for its failure to train, Plaintiff must

first prove the training and/or supervision was in fact inadequate, and then show the

following: (1) the officers exceeded constitutional limitations on the use of force; (2) the

use of force arose under the circumstances that constitute a usual and recurring situation

with which police officers must deal; (3) the inadequate training and/or supervision

demonstrates a deliberate indifference on the part of the City toward persons with whom

the police officers come into contact; and (4) there is a direct causal link between the

constitutional deprivation and the inadequate training and/or supervision. See ***Brown v.

Gray***, **227 F. 3d 1278, 1287 (10th Cir. 200)**. A single incident of excessive force can

establish the existence of an inadequate training program if there is some "other evidence"

of the program's inadequacy. See Id. at 1286. In addition, the deliberate indifference",

standard may be satisfied when a municipality has actual or constructive notice that its

actions or failure to act is substantially certain to result in a constitutional violation, and it

consciously or deliberately chooses to disregard the risk of harm. ***Carr v. Castle***, **337 F. 3d

1221, 1229 (10th Cir. 2003).** In most instances notice can be established by proving

a"pattern of tortious conduct." Id. Training can be constitutionally inadequate even if the

underlying policies are constitutionally adequate. *Id* at **1229**. However, training under

policies that are themselves unconstitutional certainly amounts to deliberate indifference to

the constitutional rights of citizens, especially when a policy-maker knew or should have

known that the policies were unconstitutional.

Similarly, if a city promulgates a constitutional policy but trains its officers to

violate that policy.... a facially constitutional policy will not shield the city from liability."

***Cordova v. Aragon*, 569 F. 3d 1183, (10th Cir. 2009)**.

In the case at bar, the evidence is clear that the Defendant Officers were observed by

eye witnesses punching and kicking Robin Howard in addition to the knee strikes being

administered against him. See Exhibit #1 through Exhibit #5 Depositions of Catalina

Montiel; Deposition of Gerardo Ramos; Deposition of Nerick Limon; and Deposition of

Jessica Limon. A reasonable jury reviewing these facts could find that the City failed to

properly train and supervise its officers, and has been deliberate indifferent to the

constitutional violations of its officers. A reasonable jury could also find that the City is

aware of and allows its officers to act unconstitutionally based on its policies and

procedures. Therefore, there exists a genuine issue of material fact as to whether the City

failed to properly train and/or supervise its officers, and was deliberately indifferent to the

unconstitutional conduct of its officers.

With respect to the City's supervision of the City's officers, the Tenth Circuit has

held that municipal liability for failure to supervise must be predicated, like a failure to

train, on whether " the City's policymakers ' can reasonably be said to have been

deliberately indifferent to the need' for further training or supervision." ***Bryson v. City of***

***Oklahoma City***, **627 F. 3d 784, 789 (10th Cir. 2010)( citing Canton v. Harris, 489 U.S.**

**378, 390 (1980).** Plaintiff has established evidence in this case which create issues of

material facts sufficient to preclude summary judgment in this case.


### PROPOSITION VI

**The City Is Not Immune From Plaintiff's State Law Claims Which Are
Not Pled as Malicious And Reckless Under The Governmental Tort
Claim Act** .

Under The Governmental Torts Claim Act (GTCA), liability is extended to a

municipality for torts which a private person would be liable unless those torts are

committed outside of the scope of employment unless they are committed in bad faith or in

a malicious manner. **Okla. State.tit. § 153(A).** See also, ***Mustain v. Grand River Dam***

***Auth., 2003 OK 43***,¶ **21, 68 P. 3d 991**; ***Pellegrino v. State ex rel. Cameron University,***

**2003 OK 2, ¶1, 63 p.3d 535**; ***Carswell v. Oklahoma State University***, **1999 OK 102, ¶ 17,**

**995 P. 2d 1118**; ***Nail v. City of Henryetta***, **1996 OK 12, ¶ 10, 911 P. 2d 914.** Therefore,

generally, municipalities are not provided immunity from suit in excessive force claims.

***Morales v. City of Oklahoma City***, **230 P.3d 869 (Okl. 2010).**

> "To construe §155(4) as providing blanket immunity to
> political subdivisions for any claim arising from
> law enforcement would not conform to established precedent.
> We have consistently held that a municipality is liable for the

tortious acts of police officer committed within the scope of employment as defined by the GTCA."
***Tuffy's Inc. v. City of Oklahoma City,*** **212 P.3d 1158, 1167 (Okla. 2009)**

The Oklahoma Supreme Court in ***Morales*** went on to state:

> "Once an officer makes a decision to enforce a law by making an arrest, he or she must do so in a lawful manner."
> ***Id.*** **at 876.**

Where a tort is committed during arrest, the GTCA does not provide immunity from lawsuits to the police office or governmental employer. ***Id.*** Oklahoma Law provides a "police officer owes a negligence based duty of care to an arrestee to protect the arrestee from injury." ***Id. at 878.*** Police Officers are only allowed use of force that a reasonable prudent officer would use in consideration of the circumstances. ***Id***. The officers subjective state of mind is irrelevant. ***Id.***

The doctrine of *respondeat superior* is applicable under the GTCA**.** Under the theory of *respondeat superior* **,** one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business. See, e.g. ***Decorte v, Robinson***, **1998 OK 87, ¶12, 969 P. 2d 358.** Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact. ***Fehring v. State Ins. Fund,* 2001 OK 11, 19 P. 3d 276**, ***Carswell v. Oklahoma State University***, **1999 OK 102, ¶ 17,995 P. 2d 1118.**

Pursuant to the GTCA, statutory immunity for providing protective services (police or fire) is not co-extensive with a blanket immunity from common- law negligence for carrying out law enforcement duties. *Salazar v. City of Oklahoma City*, **1999 OK 20, 976 P**. **2d 1056, 1066.** As such, if an officer is carrying out a "law enforcement duty" rather than "a police protection duty then the officer and the municipality can be held liable for the officer's negligence. *id*.

When determining whether the action of an officer is one of "law enforcement" or "police protection", courts look at the relationship between the officer and/or city and the person injured. *Salazar,* **at 1065.** If the officer stood as a "protector*"* then the municipality actions are immune. But the officer stood as a law enforcer then its actions are actions are not within the sec. 155(6) immunity. Id.

Plaintiff has brought claims against the Defendant City alleging assault and battery, and negligence. In as much as Plaintiff's claim for assault and battery against the City alleges malicious and reckless conduct, Plaintiff's claim places the officers conduct outside their scope of employment. Therefore, Plaintiff concedes that the GTCA provides immunity for the City.

Robin Howard stated in his post- arrest interview that as soon as Coffey pulled him from the fence, he began wailing on him, and started beating the hell out of him. Further, the eye witnesses have all testified that they saw Coffey and Grady punch Howard in the ribs three or four times both before and after handcuffing Howard. See Transcript of

Statement of Robin Howard, Exhibit #1; p.1, 2;  Exhibit #3,  Deposition of Catalina

Montiel;  Exhibit # 2, Deposition of Gerardo Ramos,

Questions of negligence are jury questions. Summary Judgment is generally not

appropriate in negligence cases. In this case there exists significant dispute of material facts

which should preclude summary judgment.

**PROPOSITION VII**
**Because There Is No Cause of Action Against The City Under The**
**OGTCA, Plaintiff Can  Bring A Bosh Claim Against The City.**

Plaintiff's state claims against the Defendant officers  allege malicious, reckless and

wanton conduct against Defendant officers which may place their actions outside the scope

of their employment pursuant to the Oklahoma Governmental Tort Claims Act. In that case,

Plaintiff will have no remedies against the City of Oklahoma City. The Oklahoma

Constitution explicitly states the following:

"The right of the people to be secure in their persons, houses, papers, and
effects against unreasonable searches or seizures shall not be violated; and no warrant shall
issue but upon probable cause supported by oath or affirmation, describing as particularly
as may be the place to be searched and the person or thing to be seized."
**Article 2 § 30 of the Oklahoma Constitution.**

In ***Bosh v. Cherokee County Building Authority,*** **2013 OK 9, 305 P. 3d 994, 997**,

the Oklahoma Supreme Court noted that in ***Washington v. Berry***, **2002 OK 45, 55 P. 3d**

**1036**, the court had held that a private cause of action "may exist" under Article 2 section 9

of the Oklahoma Constitution and the Eighth Amendment of the United States Constitution,

despite the provisions of the Governmental Tort Claims Act. The Supreme Court in ***Bosh***

viewed the *Washington v. Berry* case as recognizing that a "potential cause of action

existed in spite of the OGTCA" under the Oklahoma Constitution. Consequently, the Court

held that " The OGTCA cannot be construed as immunizing the *state* completely from all

liability for violations of the constitutional rights of its citizens..... Therefore, we answer the

reformulated question and hold that the Oklahoma Const. Art No. Caps 2, section 30

provides a private cause of action for excessive force, notwithstanding the requirements

and limitations of the OGTCA." Clearly, The Court's pronouncement is in relation to cases

where the OGTCA would provide immunity to *state agencies or municipalities* such as

this case.

Subsequently, in *Perry v. City of Norman*, **2014 OK 119, 341 P.3d 689**, the Court

clarified its holding in *Bosh* by stating that a *Bosh* claim for excessive force against a

*municipality* as applied to police officers and other law enforcement personnel, may not be

brought against a *municipality* when a cause of action under the OGTCA is available. In

*Perry*, the Plaintiff in that case alleged that he was beaten by police officers from the City

of Norman. The Plaintiff filed a lawsuit against only the City of Norman and alleged that

the City was liable for the actions of the police officers in violation of art. 2 sec. 30 of the

Okla. Const. Pursuant to *Bosh.*

Clearly, *Perry* is exactly on point with the case at bar. " [A] *Bosh v. Cherokee*

*Building Authority*, claim for excessive force against a municipality, as applied to police

officers and other law enforcement personnel, may not be brought when a cause of action

under the Oklahoma Governmental Tort Claims Act, 51 O.S. 2011 §151 et seq (OGTCA) is available." *Id* at 690. In this case, because Plaintiff's cause of action is assault and battery, and she has pled wanton, reckless and malicious conduct, Plaintiff does not have a cause of action available under the OGTCA against the City.

Therefore, The City can be liable on Plaintiff's state constitutional claim.

With regards to Plaintiff's claims for emotional distress, Plaintiff's allegations are brought on behalf of the decedent Robin Howard against the individual Defendant officers.

Respectfully submitted,

/s/ E. ED BONZIE
E. Ed Bonzie, OBA #15190
E. ED BONZIE, P.C,
8201 S. Walker
Oklahoma City, Oklahoma 73139
Telephone:    405-631-1021
Facsimile:    405-616-2488
Ed@edbonzielaw.com

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on December 23, 2015, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Richard C. Smith
Jennifer M.Warren
200 N. Walker, Suite 400
Oklahoma City, Oklahoma 73102

and

Stacy Haws Felkner
Susan Knight
MANCHESTER AND KNIGHT, PLLC
211 N. Robinson, Suite 800 N
Oklahoma City, Oklahoma 73102

        /s/ E. Ed Bonzie